[No. S019095. Mar. 16, 1992.]

J. E. ROBINSON, Plaintiff and Respondent, v.
FAIR EMPLOYMENT AND HOUSING COMMISSION, Defendant and
Appellant.

230

COUNSEL

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Andrea Sheridan Oridan, Nelson Kempsky and Roderick E. Walston, Chief Assistant Attorneys General, Carole Ritts Kornblum, Assistant Attorney General, Marian M. Johnston, Louis Verdugo, Jr., and Henry Torres, Jr., Deputy Attorneys General, for Defendant and Appellant.

Patricia A. Shui, Catherine K. Ruckelshaus and Abby J. Leibman as Amici Curiae on behalf of Defendant and Appellant.

Grace E. Emery for Plaintiff and Respondent.

Bernard L. Allamano and Alice L. Ramsey as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**BAXTER, J.**—We are asked to construe Government Code section 12926, subdivision (c) (section 12926(c)), which defines "employer" for purposes of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), and to determine whether under that section and the

administrative regulation implementing it, plaintiff was properly subjected to the jurisdiction of the Fair Employment and Housing Commission (FEHC).[1]

The particular focus of our inquiry is the meaning of the statutory term "regularly employing" as applied to a person who has more than five employees, but has as many as five of them working on only two days of each week. An FEHC regulation defines "regularly employing" as "employing five or more individuals for each working day in any twenty consecutive calendar weeks in the current calendar year or preceding calendar year." (Cal. Code Regs., tit. 2, § 7286.5, subd. (a)(1).) (Regulation 7286.5.)

Plaintiff, assuming that Regulation 7286.5 establishes the jurisdiction of the FEHC, argues that under that definition he is not subject to FEHC jurisdiction. Discriminatory practices declared to be unlawful by section 12945 are so if the actor is an employer under section 12926(c), however. The statute, not the regulation, determines both the scope of section 12945 and the enforcement jurisdiction of the Department of Fair Employment and Housing and the FEHC.

The Court of Appeal, accepting the reasoning of the FEHC, concluded that the number of persons on the payroll, not the number working on any particular day, is determinative of the number of employees an employer regularly employs. We agree and reject plaintiff's further argument that Regulation 7286.5 did not give him notice that he was subject to FEHC jurisdiction. We therefore affirm the judgment of the Court of Appeal.

## I.

This litigation arises out of the refusal of plaintiff, a dentist, to reinstate Josephine Saul as a dental assistant after her six-week pregnancy leave terminated on February 21, 1984. At that time, plaintiff employed a receptionist and two dental assistants, each of whom worked five days per week. He also employed three dental hygienists who worked part time: one worked four days a week, one worked two days a week, and one worked only on

---

[1]All further references to code sections are to the Government Code, unless otherwise indicated.

Section 12926(c) states: " 'Employer,' except as hereinafter provided, includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly; the state or any political or civil subdivision thereof and cities.

" 'Employer' does not include a religious association or corporation not organized for private profit."

Saturday mornings. Thus, he employed six persons, but on only two days each week were there as many as five employees working.[2]

Saul filed a complaint with the FEHC charging that plaintiff's refusal to reinstate her as a dental assistant following her pregnancy leave was an unlawful practice under section 12945.[3] Following the issuance of an accusation against plaintiff and a hearing before an administrative law judge, the FEHC concluded that it had jurisdiction and that plaintiff had violated section 12945 when he refused to reinstate Saul.[4] The FEHC ordered plaintiff to cease unlawful discriminatory practices; to pay back wages of $12,950 and retirement plan contributions of $1,295, both with interest; and to pay $20,000 as damages in compensation for Saul's emotional injury.[5]

Plaintiff had stipulated that he had five or more employees on his payroll for at least twenty consecutive calendar weeks in 1983 and 1984, but argued that the FEHC lacked jurisdiction over him because some of the employees worked part time and were not physically present in his office on each working day during those weeks.

Plaintiff sought review of the FEHC ruling by a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) filed in the superior court pursuant to section 11523, again challenging the jurisdiction of the FEHC on the ground that he was not an employer as defined by the FEHA. The superior court agreed and directed that a peremptory writ of mandate issue compelling the FEHC to dismiss the accusation. The FEHC appealed.

There being no prior case construing the term "regularly employing," the parties and the courts below relied on Regulation 7286.5 which was adopted

---

[2]The staffing schedule was:

| Monday: | 4 persons |
| Tuesday: | 4 persons |
| Wednesday: | 1 person |
| Thursday: | 5 persons |
| Friday: | 5 persons |
| Saturday: | 3 persons |

[3]Subdivision (b)(2) of section 12945 makes it an unlawful employment practice to deny a leave of absence on account of pregnancy for a reasonable period, not to exceed four months, "during which the female employee is disabled on account of pregnancy, childbirth, or related medical conditions."

[4]This ruling was made after plaintiff first sought to raise his jurisdictional claim in the superior court. In *Robinson* v. *Department of Fair Employment & Housing* (1987) 192 Cal.App.3d 1414 [239 Cal.Rptr. 908], the Court of Appeal held that the claim must first be made in the administrative proceeding.

[5]The FEHC concedes that the compensatory damages award is not enforceable. (See *Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40 [276 Cal.Rptr. 114, 801 P.2d 357].)

by the FEHC in 1983, administrative construction and decision, and the construction and application of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.; hereafter Title VII).

The FEHC has asserted jurisdiction when an employer has five or more persons on the payroll for each working day, and includes part-time employees—i.e., those who work less than a full shift and those who do not work each day. (*Dept. Fair Empl. & Hous.* v. *Bee Hive Answering Service* (1984) No. 84-16, FEHC Precedential Decs. 1984-85, CEB 8, pp. 12-13; *Dept. Fair Empl. & Hous.* v. *Travel Express* (1983) No. 83-17, FEHC Precedential Decs. 1982-83, CEB 16, pp. 3-5.)

The Court of Appeal considered these decisions significant in the proper construction of section 12926(c), applying the rule that " '[c]onsistent administrative construction of a statute over many years, particularly when it originated with those charged with putting the statutory machinery into effect, is entitled to great weight . . . .' " (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 491 [156 Cal.Rptr. 14, 595 P.2d 592].) That court also noted the apparent acceptance of the FEHC construction of section 12926 by the Legislature, which had amended the section in 1985 without making any change in subdivision (c).

The Court of Appeal also noted that while Title VII defines employer as a "person . . . who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." (42 U.S.C. § 2000e(b)), federal courts have consistently held that regular part-time employees are properly included as employees within the meaning of that definition. (See *Thurber* v. *Jack Reilly's, Inc.* (1st Cir. 1983) 717 F.2d 633, 634, and cases cited.)

Finally, the court reasoned that a broad reading of section 12926 was required both by the rule that remedial legislation be given a liberal construction to promote its objective (*Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110]) and by the express command of section 12993, subdivision (a) that: "The provisions of this part shall be construed liberally for the accomplishment of the purposes thereof." Public policy required that the statute be construed to "safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination . . . ." (§ 12920.)

## II

Plaintiff does not dispute that section 12926(c) is broad enough to encompass employers of part-time employees who work less than a full day

or less than the full workweek, but argues that in defining "employer" the regulation makes no reference to persons "on the payroll," and clearly and unambiguously applies only to someone who has five or more employees working each working day. He contends that because the distinction between "full-time" and "part-time" employees refers only to those employees who work all or less than all of the working day (Reg. 7286.5, subd. (b)), employees who work a full day on some but less than all working days of the week are not "regularly" employed.

The dispositive question, however, is whether the FEHC assertion of jurisdiction over plaintiff is authorized by section 12926(c). If so, the regulation, as construed and applied by the FEHC, is consistent with the statute. Only if the regulation purported to extend FEHC jurisdiction to persons not within the statutory definition of employer, or if the FEHC misled plaintiff regarding his status, might plaintiff be entitled to relief.

A. *Construction of Section 12926(c).*

The statutory term "regularly employing" is susceptible of more than one interpretation. Therefore, the court will look to the legislative history of the FEHA (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 96 [255 Cal.Rptr. 670, 767 P.2d 1148]) and to administrative construction reasonably contemporaneous with the law's adoption in order to ascertain the intent of the Legislature in using the phrase. (*City of Los Angeles* v. *Public Utilities Com.* (1975) 15 Cal.3d 680, 696 [125 Cal.Rptr. 779, 542 P.2d 1371]; *Wotton* v. *Bush* (1953) 41 Cal.2d 460, 466 [261 P.2d 256].) "Consistent administrative construction of a statute over many years, particularly when it originated with those charged with putting the statutory machinery into effect, is entitled to great weight and will not be overturned unless clearly erroneous." (*DiGiorgio Fruit Corp.* v. *Dept. of Employment* (1961) 56 Cal.2d 54, 61-62 [13 Cal.Rptr. 663, 362 P.2d 487].) In construing a statute the court will also consider the purpose of the law and adopt a construction which will further that purpose. (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 485 [208 Cal.Rptr. 724, 691 P.2d 272].)

The intent of the Legislature when it used the limiting phrase "regularly employing" in the definition of employer is crucial since a regulation which is inconsistent with the statute it seeks to implement is invalid. (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 679 [94 Cal.Rptr. 279, 483 P.2d 1231]; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; *Steilberg* v. *Lackner* (1977) 69 Cal.App.3d 780, 789 [138 Cal.Rptr. 378].) In this case, the proper

construction of the statute cannot be resolved solely by reference to the administrative construction[6] reflected in Regulation 7286.5 because the phrase "regularly employing" was used in defining employer for purposes of establishing fair employment law jurisdiction long before adoption of the regulation and the creation of the FEHC itself.[7] Its history predates enactment of the FEHA.

In 1980, the FEHC succeeded to the powers of the Fair Employment Practices Commission.[8] At that time the Fair Employment Practices Act, then part 4.5 of the Labor Code, was repealed and reenacted as part of the FEHA.[9] That part of the definition of employer which is in dispute here was taken verbatim from subdivision (d) of former section 1413 of the Labor Code, where it had existed unamended since the adoption of the Fair Employment Practices Act in 1959. (Stats. 1959, ch. 121, § 1, p. 2000.) In the absence of legislative history suggesting otherwise, there is a very strong presumption that the Legislature intends that the same construction be given statutory language which has been readopted without change. (*Buchwald* v. *Katz* (1972) 8 Cal.3d 493, 502 [105 Cal.Rptr. 368, 503 P.2d 1376]; *Union Oil Associates* v. *Johnson* (1935) 2 Cal.2d 727, 734-735 [43 P.2d 291, 98 A.L.R. 1499]. See also, Lab. Code, § 2.)

[6]Even though the court will give great weight to an administrative agency's interpretation of its own regulations and the statutes under which it operates, these are questions of law which the court must ultimately resolve. (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593]; *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].)

[7]The presumption that the Legislature is aware of an administrative construction of a statute should be applied only on a showing that the construction or practice of the agency had been made known to the Legislature (*Pacific Greyhound Lines* v. *Johnson* (1942) 54 Cal.App.2d 297, 303 [129 P.2d 32]), or is one of such long standing that the Legislature may be presumed to know of it. (*El Dorado Oil Works* v. *McColgan* (1950) 34 Cal.2d 731, 739 [215 P.2d 4].)

Because the Legislature authorized the FEHC to establish the system of publication in which precedential decisions are printed (§ 12935, subd. (h); Labor Code, former § 1418, subd. (i)) the Legislature now is presumed to be aware of the two administrative decisions on which the Court of Appeal relied, and thus has reason to be aware of the construction the agency placed on its own regulation.

[8]Section 12910: "(a) The Department of Fair Employment and Housing and the Fair Employment and Housing Commission succeed to, and are vested with, all of the powers, duties, purposes, responsibilities, and jurisdiction of the Division of Fair Employment Practices and the State Fair Employment Practices Commission, respectively, in the Department of Industrial Relations, which are hereby abolished."

[9]There was little substantive change in the reenacted provisions addressing employment discrimination. The declaration of public policy was expanded to include discrimination in housing, and to include marital status among the categories of discrimination which violate public policy. (§ 12920. Cf. Lab. Code, former § 1411.) Section 12940, which specifies practices that are unlawful, similarly added reference to discrimination on the basis of sex. It otherwise carried over verbatim, however, the provisions which had been former section 1420 of the Labor Code. (Also compare § 12941 [age] with Lab. Code, former § 1420.1; § 12943 with Lab. Code, former § 1420.2.)

 We have therefore considered the history of the Fair Employment Practices Act and have attempted to ascertain the legislative purpose underlying the use of the phrase "regularly employing five or more persons" in former section 1413, subdivision (d), of the Labor Code. While the legislative history and evidence of administrative construction are not conclusive, they are helpful.

Fair employment legislation was first proposed in California in 1943.[10] The fair employment bill which is the forerunner of the present law was introduced on January 9, 1945, as Assembly Bill No. 3 (Assem. Bill No. 3 (1945 Reg. Sess.)) and was reintroduced in each odd-numbered year thereafter until passage of the Fair Employment Practices Act in 1959. (See Tobriner, *California FEPC* (1965) 16 Hastings L.J. 333-334 [hereafter Tobriner].)

In addition, an initiative, "Fair Employment Practices Act," was on the ballot in 1946 as Proposition 11, but was defeated by the voters. The definition of an employer as a person "regularly employing" five or more persons can be traced at least to Assembly Bill No. 3 and to that initiative measure. Both would have established the California Fair Employment Practices Act and a State Fair Employment Practices Commission, and both used the term "regularly employing."

Paragraph 4 of section 4 of Assembly Bill No. 3 read: "The term 'employer,' except as hereinafter provided includes any person regularly employing five or more persons or any person acting in the interest of such employer, directly or indirectly, with or without his knowledge; the State or any political or civil subdivision thereof and cities.

"The term 'employer' does not include a social club, fraternal, charitable, educational or religious association, or corporation not organized for private profit.

"This act shall not apply to or affect any farmer, agricultural organization, agricultural cooperative association, or agriculture in any form or manner." (Assem. Bill No. 3, *supra*, p. 2.)

Paragraph 4 of section 11 in the law proposed by the 1946 Fair Employment Practices Act initiative read: "The term 'employer' includes the State

---

[10]The 1943 bill (Assem. Bill No. 50 (1943 Reg. Sess.)), introduced by Assemblyman Hawkins would have added section 2806 to the Labor Code. As introduced on January 7, 1943, the proposed section read: "Any person, who, directly or indirectly excludes a citizen because of race, color, or creed from any public employment, or employment in any capacity in industries engaged on defense contracts, shall be guilty of a misdemeanor and punishable by a fine of not less than one hundred dollars ($100)."

or any political or civil subdivision thereof and cities, but does not include any person regularly employing fewer than five (5) persons, nor associations or corporations organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, nor clubs organized and operated exclusively for pleasure, recreation and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual." (Ballot Pamp., analysis of Prop. 11 as presented to the voters, Gen. Elec. (Nov. 5, 1946) pt. II, p. 12.)

Contemporary understanding of the term "regularly employing" is reflected in the argument in favor of the initiative which stated both that "[e]mployment situations in which fewer than five persons are involved are exempted by the proposition" and noted: "This is no new law. It is already operating successfully in many States, including New York, New Jersey, Indiana, Wisconsin and Massachusetts." (Ballot Pamp., analysis of Prop. 11 as presented to voters, Gen. Elec. (Nov. 5, 1946) pt. I, p. 11.)

New York had enacted the first state legislation outlawing discrimination in housing and establishing the New York State Commission Against Discrimination, the Ives-Quinn Law, on March 12, 1945. (1945 N.Y. Laws, ch. 118.) It has been suggested that the California Fair Employment Practices Act was patterned on that New York law. (Norgren & Hill, Toward Fair Employment (1964) pp. 93-94, fn. 8; 36 Notre Dame Law. (1961) 189, 193; Note, *The California FEPC: Stepchild of the State Agencies* (1965) 18 Stan.L.Rev. 187, 190, fn. 20; Note, *The Right to Equal Treatment: Administrative Enforcement of Antidiscrimination Legislation* (1961) 74 Harv. L.Rev. 526, 527.) As we have noted, however, the California definition of "employer" is derived from Assembly Bill No. 3, which was introduced in the Legislature prior to the adoption of the New York fair employment law. Moreover, the New York law did not use the same language in defining employer. As enacted in 1945, the New York law provided: "The term 'employer' does not include . . . any employer with fewer than six persons in his employ." (1945 N.Y Laws, ch. 118, § 27, p. 458.) The same wording is used today in the New York statute. (N.Y. Exec. Law, art. 14, § 292.)

Although the language differed, the Fair Employment Practices Commission construed the California law in the same manner as the New York State Commission Against Discrimination construed the New York law. After interviews with persons responsible for administering the Fair Employment Practices Act in 1965, one writer described the manner in which the employer provision was being implemented:

"One question which arises under this exemption is whether it includes an individual who owns and conducts several businesses at each of which less

than five persons are employed but at all of which a total of five or more are employed. As early as 1948 New York's State Commission Against Discrimination held that such an individual's employees were all to be counted together and that therefore the exemption did not apply. The position of the California Fair Employment Practices Commission is the same.

"The California act states that an employer falls within its provisions only when he is *regularly* employing five or more persons. This does not mean that the accused employer must have five or more employees every day throughout the year or that he must have five or more employees at the time of the discriminatory act. It does mean that he must have an 'average' or 'normal' complement of five or more persons in his employ on a 'regular' basis. Precisely how this rule is to be applied in practice is not yet determined. The commission hopes to evolve a clear formula by deciding actual cases." (Tobriner, *supra*, 16 Hastings L.J. at pp. 342-343, fns. omitted.)

This understanding of the law is reflected in the first precedential decision of the FEHC in which this question was raised. In *Dept. Fair Empl. & Hous. v. Travel Express, supra*, No. 83-17, FEHC Precedential Decisions 1982-83, CEB 16, the facts were similar to those before this court. The employer had five employees, two of whom worked alternate days and filled one position. There were no more than four employees working on any working day. The FEHC noted that there was at the time of that decision no appellate case or FEHC precedential decision on the issue, and found that the respondent was a person who regularly employed five or more persons within the meaning of the statute.

The FEHC analogized the employment pattern of the respondent with that of the employer in *Pascutoi* v. *Washburn-McReavy Mortuary* (D.Minn. 1975) 11 Fair Empl. Prac. Cas. (Bur. Nat. Affairs) 1325, a case decided under Title VII, which also held that part-time workers were to be included in determining the number of employees even though they did not work on each working day. Like the court in *Pascutoi*, the FEHC reasoned that its obligation to liberally interpret the FEHA to further its remedial purpose supported a finding that the respondent had employed a minimum of five people during the pertinent period and thus was an employer within the meaning of section 12926, and section 7286.5, subdivision (a) of title 2 of the then California Administrative Code. (*Dept. Fair Empl. & Hous.* v. *Travel Express, supra*, No. 83-17, FEHC Precedential Decs. 1982-83, CEB 16, pp. 4-5.)

This construction is consistent with the purpose of the legislation and of the small-employer exemption since by looking to the number of employees on the payroll the enforcement agency is able to channel its resources into enforcement where job opportunities will be maximized.

The purpose of the FEHA/Fair Employment Practices Commission exemption appears to be the same as that established in the similar, but not identical, statutes of the several other states which had enacted fair employment laws prior to California. New Jersey,[11] Indiana,[12] and Wisconsin[13] did so in 1945. They were followed by Massachusetts in 1946;[14] Connecticut in 1947;[15] New Mexico, Oregon, Rhode Island, and Washington in 1949;[16] Colorado in 1951;[17] and Michigan, Minnesota, and Pennsylvania in 1955.[18] (Kovarsky, *A Review of State FEPC Laws* (1958) 9 Labor L.J. 478; Murray, *The Right to Equal Opportunity in Employment* (1945) 33 Cal.L.Rev. 388, 420.) Almost all included exemptions of small employers, but only one used the adverb "regularly" as a modifier in defining employer.[19] That state, Minnesota, did so in a paragraph of "exceptions" which included "[a] person who regularly employs fewer than eight individuals, . . . ." (1955 Minn. Laws, ch. 516; Minn. Stat. § 363.02.)[20] Because the Minnesota State Act Against Discrimination differs from the Fair Employment Practices Act in many respects, and the term "regularly employing" in the California statute can be traced to the 1945 bill, it does not appear that the Legislature had the Minnesota statute in mind when the Fair Employment Practices Act was adopted in 1959.

Notwithstanding the various phraseology of the small-employer exemptions and the inclusion of the term "regularly" in the laws of Minnesota and California, no case law or contemporary comment on fair employment laws

[11](1945 N.J. Laws, ch. 169.)

[12](1945 Ind. Acts, ch. 325.)

[13](1945 Wis. Laws, ch. 490; Wis. Stats. ch. 111, subch. II, §§ 111.31-111.37 (1945).)

[14](1946 Mass. Acts, ch. 368.)

[15](1947 Conn. Pub. Acts 171, tit. 31, ch. 563.)

[16](1949 N.M. Laws, ch. 161; 1949 Or. Laws, ch. 221; 1949 R.I. Pub. Laws, ch. 2181; 1949 Wash. Laws, ch. 183.)

[17](1951 Colo. Sess. Laws, ch. 217.)

[18](1955 Mich. Pub. Acts No. 251 (H.24); Mich. Comp. Laws, §§ 423.301-423.311; 1955 Minn. Laws, ch. 516 (H.778); Minn. Stat. §§ 363.01-363.11; 1955 Pa. Laws Act No. 222; Pa. Stat. Ann. tit. 43, §§ 951-963 (Purdon).)

[19]State fair employment laws enacted as of 1964 are compiled in State Fair Employment Laws and Their Administration (Bur. Nat. Affairs 1964).

Of the states whose fair employment laws were enacted prior to that enacted in California, only Wisconsin had no small-employer exemption. The laws of New Mexico and Rhode Island applied to employers of four or more persons. The Connecticut law applied to employers of five or more persons. Those of Colorado, Indiana, New Jersey, New York, and Oregon applied to employers of six or more persons. Those of Michigan, Minnesota, and Washington applied to employers of eight or more persons, and that of Pennsylvania to employers of twelve or more persons.

[20]The Minnesota law was subsequently changed to define employer as "[a] person who has one or more employees." (Minn. Stat. Ann. § 363.01, subd. 17 (West).) Case law and administrative decisions construing the Minnesota law are not helpful in ascertaining the legislative intent underlying the Fair Employment Practices Act or the FEHA, therefore.

attaches any significance to those differences. The commentators uniformly explain the reasons for the exemptions as relieving the administrative body of the burden of enforcement where few job opportunities are available, and as keeping the agency out of situations in which discrimination is too subtle or too personal to make effective solutions possible.

One commentator explains: "Employers of less than four to eight employees are excepted from statutory coverage because regulation of the practices of numerous small employers was thought infeasible. The number of jobs which could be made available in these units is relatively small compared to the results that can be obtained by eliminating discriminatory practices of large firms. And discrimination between persons working together in a small establishment might often be so elusive that the law could not effectively protect the employee. (Note, *The Operation of State Fair Employment Practices Commissions* (1955) 68 Harv.L.Rev. 685, 687-688, fns. omitted.)

Others, addressing the California law specifically, reach a similar conclusion: "The exceptions for employers of fewer than five persons and for family and domestic servants serve a dual function: they keep the Commission out of trivia in terms of job opportunities and out of situations too personal for the law to effect a satisfactory solution." (Note, *The California FEPC: Stepchild of the State Agencies, supra,* 18 Stan.L.Rev. at p. 202.)

"A sense of justice and propriety led the framers to believe that individuals should be allowed to retain some small measure of the so-called freedom to discriminate; besides, they feared the political repercussions of eliminating totally an area of free choice whose infringement had been so bitterly opposed. In the second place, the framers believed that discrimination on a small scale would prove exceedingly difficult to detect and police. Third, it was believed that an employment situation in which there were less than five employees might involve a close personal relationship between employer and employees and that fair employment laws should not apply where such a relationship existed. Finally, the framers were interested primarily in attacking protracted, large-scale discrimination by important employers and strong unions. Their aim was not so much to redress each discrete instance of individual discrimination as to eliminate the egregious and continued discriminatory practices of economically powerful organizations. Thus they could afford to exempt the small employer." (Tobriner, *supra,* 16 Hastings L.J. at p. 342, fns. omitted.)

It is noteworthy that in discussing these small employer exemptions the commentators uniformly assumed that "regularly employing" referred to the

number of persons in the employ of an employer, i.e., the number of persons on the payroll. The existence of an employee-employer relationship determined whether the employee would be counted to determine applicability of the law.

To the extent that contemporary understanding of the scope of the Fair Employment Practices Act can be ascertained, that understanding also supports the FEHC's argument that the total number of employees is determinative, and that the qualifying phrase "regularly employing" does not permit exclusion of part-time employees, whether they work only part of the working week or only part of the working day.

In the April 16, 1959, Report of the Legislative Counsel, analyzing Assembly Bill No. 91, the scope of the measure is described as extending to "those *employing* five or more persons including the State and political and civil subdivisions thereof and cities, but not including non-profit social clubs, fraternal, charitable, educational, or religious associations or corporations; but specifies that an individual employed by his parents, spouse, or child, or in domestic service in the home of any person, is not a subject employee, and that employers and employees are not covered in respect to farm work performed by agricultural workers residing on the land on which they are employed." (Italics added.) The failure to note or attach special significance to the qualifying term "regularly" suggests an understanding that the word would be given its usual meaning—i.e., occurring at fixed intervals (see Webster's New Collegiate Dict. (9th ed. 1984) p. 992) and did not merit explanation. Given that understanding, the number of employees who work regularly as opposed to intermittently, or who are carried on the payroll at the time of the discriminatory act, would be dispositive.

In its pamphlet FEPC, Fair Employment Law in California, Your Rights, Your Responsibilities, the Fair Employment Practices Commission also appears to have construed the exemption as one based on the total number of employees, stating: "*Exempt* are employers of fewer than five, of domestic workers, of farm workers living where employed, and certain nonprofit institutions."[21]

Plaintiff speculates that the Legislature intended to spare small businesses the burden of keeping records documenting the circumstances of each termination and layoff and from the expense of employing legal counsel to assist them in a complex and volatile area of law. Amicus curiae California

---

[21]This undated, unpaginated publication was printed shortly after the Fair Employment Practices Commission was created, as reflected by the date stamp indicating receipt of the pamphlet by the California State Library in June 1961.

Dental Association argues that dentists must employ hygienists, many of whom choose not to work full time. In addition, dentists are not educated in employment law. Therefore, amicus curiae suggests, dentists and other professionals should not be burdened with expenses related to compliance, expenses which will necessarily be passed on to the consumer.

Nothing in the history of the FEHA or the Fair Employment Practices Act supports these arguments, persuades us that the law should be construed restrictively, or suggests that it was the legislative intent to exempt professionals or other small businesses who employ part-time personnel on a regular basis. Were we to accept the construction of section 12926(c) suggested by the dissent, we would have to first assume that the Legislature intended to draw a distinction between the two categories of part-time employees, although an employee who works a full eight-hour day one day a week for several years is no less "regularly" employed than one who works one or two hours a day five days a week. Then, contrary to accepted rules of statutory construction (see *People* ex rel. *Riles* v. *Windsor University* (1977) 71 Cal.App.3d 326, 332 [139 Cal.Rptr. 378]; *City of Plymouth* v. *Superior Court* (1970) 8 Cal.App.3d 454, 466 [96 Cal.Rptr. 636]), we would have to assume that the Legislature intended that an employer of five or more workers could avoid FEHC jurisdiction by having only four on duty for one day of the regular workweek. We decline to make that assumption.

Indeed, if one purpose of the exemption of employers of less than five persons was to permit the agency to concentrate its enforcement efforts in areas involving greater numbers of employment opportunities, enforcement in this field is consistent with the legislative purpose. Plaintiff, individually, might be considered a small employer. As the California Dental Association concedes, however, there are 24,000 dentists in California, many of whom have employment arrangements similar to those of plaintiff. The number of employment opportunities is, therefore, quite large.

It is also noteworthy that California, unlike some other states, did not elect to exempt small businesses from the pregnancy leave provisions of the FEHA when it was enacted. By contrast, The Wisconsin Family Leave Act (1989 Wis. Law 228), which grants leave in connection with the birth of a child, applies only to employers of 50 or more persons on a permanent basis. (Wis. Stat. § 103.10, subd. (1)(c).) That state's Fair Employment Act (Wis. Stat. ch. 111, subch. II, §§ 111.31-111.395) applies to any person who employees at least one individual. (*Id.*, § 111.32, subd. (6)(a).) New Jersey, in a phased application of its Family Leave Act applied it in the first year to any person who "employs 100 or more employees for each working day during each of 20 or more calendar workweeks in the then current or

immediately preceding calendar year," reducing the number in the second year to 75, and finally in the third year to 50. (1989 N.J. Laws, ch. 261, eff. May 4, 1990.) The New Jersey Law Against Discrimination (10 N.J. Rev. Stat., ch. 5, § 10:5-5) has no exemption for small businesses.

■ Because the FEHA is remedial legislation, which declares "[t]he opportunity to seek, obtain and hold employment without discrimination" to be a civil right (§ 12921), and expresses a legislative policy that it is necessary to protect and safeguard that right (§ 12920), the court must construe the FEHA broadly, not, as plaintiff suggests, restrictively. Section 12993, subdivision (a) directs: "The provisions of this part shall be construed liberally for the accomplishment of the purposes thereof." If there is ambiguity that is not resolved by the legislative history of the FEHA or other extrinsic sources, we are required to construe the FEHA so as to facilitate the exercise of jurisdiction by the FEHC. (*Brown* v. *Superior Court, supra,* 37 Cal.3d at p. 486.)

■ We therefore conclude that plaintiff is an employer within the meaning of section 12926(c) and is subject to the pregnancy leave requirement of section 12945. Therefore, the FEHC has enforcement jurisdiction over him. (See *Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 391 [211 Cal.Rptr. 758, 696 P.2d 150].)

B. *Regulation 7286.5.*

■ Plaintiff does not claim that section 12926(c), which defines employer as a person "regularly employing five or more persons" is vague or that if considered alone the statutory definition is inadequate to give employers of five or more persons notice that they fall within the statutory definition. He claims, however, that an employer who reads Regulation 7286.5 does not have notice that employees who work less than the full workweek will be counted because the regulation specifies that only persons employed for "each working day" are counted.

The claim is not that Regulation 7286.5 is impermissibly vague,[22] but that it can be read as excluding plaintiff's part-time employees from consideration in determining if he is an employer subject to FEHC jurisdiction. If read as plaintiff suggests, however, Regulation 7286.5 would be inconsistent with section 12926(c) and would, therefore, be invalid. "Whenever by the express or implied terms of any statute a state agency has authority to adopt

---

[22]Such a claim would necessarily fail. (See *Thole* v. *Structural Pest Control Bd.* (1974) 42 Cal.App.3d 732, 737 [117 Cal.Rptr. 206].)

regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute." (§ 11342.2. See also, *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 205 [132 Cal.Rptr. 377, 553 P.2d 537].)

Plaintiff's claim that the regulation fails to give notice thus assumes that, given two possible meanings, the regulation may be construed so as to render it invalid. Like a statute, however, whenever possible a regulation should be construed to uphold validity. (*Associated Homebuilders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 598 [135 Cal.Rptr. 41, 557 P.2d 473]; *Cal. Drive-in Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657]; *California State Restaurant Assn.* v. *Whitlow* (1976) 58 Cal.App.3d 340, 344 [129 Cal.Rptr. 824].)

Moreover, plaintiff and other employers are presumed to know the law and whether they come within the *statutory* definition of "employer." (*People* v. *Snyder* (1982) 32 Cal.3d 590, 592-593 [186 Cal.Rptr. 485, 652 P.2d 42].) Thus, the claim that the *regulation* does not give notice fails.

 If plaintiff's theory is that the FEHC should be estopped from imposing sanctions on him because Regulation 7286.5 is misleading, that claim also fails. The doctrine of estoppel is available against the government "'where justice and right require it.'" (*Lentz* v. *McMahon* (1989) 49 Cal.3d 393, 399 [261 Cal.Rptr. 310, 777 P.2d 83].) It has been applied when the government has misled a claimant (see *Lerner* v. *Board of Education* (1963) 59 Cal.2d 382 [29 Cal.Rptr. 657, 380 P.2d 97]; *Tyra* v. *Board of Police etc. Commrs.* (1948) 32 Cal.2d 666 [197 P.2d 710]; *Farrell* v. *County of Placer* (1944) 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323]), but will not be applied if to do so would nullify a "'strong rule of policy adopted for the benefit of the public.' (*County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 839-830 [186 P.2d 124].)" (*Lentz* v. *McMahon, supra,* 49 Cal.3d 393, 399.)

 We need not decide here whether, applying the balancing approach suggested in *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 496-497 [91 Cal.Rptr. 23, 476 P.2d 423], the harm caused plaintiff by the imposition of sanctions by the FEHC outweighs the governmental interest in enforcing section 12945 in his case. Plaintiff has not met one of the threshhold requirements for application of the doctrine.

 "Generally speaking, four elements must be present . . . : (1) the party to be estopped must be apprised of the facts; (2) he must intend that his

conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Lentz* v. *McMahon, supra,* 49 Cal.3d 393, 399, quoting *City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 489, and *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]. Inner quotation marks omitted.)

 Assuming, therefore, that the doctrine of estoppel may be urged on grounds that an administrative regulation is so vague as to mislead a party into believing that he or she was not subject to the statute the regulation implements, plaintiff may not do so. He did not urge this basis for estoppel in the administrative or mandamus proceedings (see *Pittsburg Unified School Dist.* v. *Commission on Professional Competence* (1983) 146 Cal.App.3d 964, 980 [194 Cal.Rptr. 672]), and has not established the factual predicate—knowledge of and reliance on Regulation 7286.5.

### III

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., and George, J., concurred.

**ARABIAN, J.,** Dissenting.—I respectfully dissent from the majority's construction of Government Code section 12926, subdivision (c) (section 12926(c)). Time and again, this court has been constrained to articulate the legislative and constitutional limitations necessarily circumscribing the jurisdictional authority of the Fair Employment and Housing Commission (FEHC or Commission). (See *Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245 [284 Cal.Rptr. 718, 814 P.2d 704] [FEHC may not award compensatory damages for emotional distress caused by housing discrimination]; *Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40 [276 Cal.Rptr. 114, 801 P.2d 357] [FEHC not authorized to award compensatory damages for sexual harassment claim]; *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379 [241 Cal.Rptr. 67, 743 P.2d 1323] [no FEHC authority to award punitive damages].) I fail to comprehend any rational basis on which the majority now acquiesce in yet another effort to expand administrative territory beyond the boundaries set by the Legislature. On the contrary, notwithstanding the intriguing variety of secondary sources used to divine legislative intent, they have construed section 12926(c) essentially out of whole cloth and materially departed from the reasonable, commonsense implication of the statute's express terms, to wit, that only those employers having

five or more employees, whether full-time or part-time, working every business day come within the Commission's authority. In doing so, the majority fill the hollow cavity of ambiguous language with the silver amalgam of judicially created jurisdiction. The ache they leave will be substantial.

Legislative intent is the touchstone of judicial interpretation; and "a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d at pp. 1386-1387.) Nevertheless, the majority analysis begins not with the actual terms of the statute but with the unexplicated conclusion that "'regularly employing' is susceptible of more than one interpretation." (Maj. opn., *ante,* p. 234.) Without examining the words themselves and delineating the possible ambiguities and reasonable alternative constructions, the majority embark on their quest for legislative intent without a chart or compass. As a critical consequence, they stray from the course of "according significance, if possible, to every word" and render the qualifier "regularly" virtually meaningless in this context.

The extralegislative sources relied on by the majority offer little assistance in this search for legislative design. Many of these are of dubious relevance;[1] and, in any event, no clear consensus emerges: while some make reference to the number of employees on the payroll as dispositive of jurisdiction, others are silent or ambiguous on the point.[2] Nor does the record suggest the Legislature considered any of these materials when enacting either section

---

[1]For example, "[u]npassed bills, as evidence of legislative intent, have little value. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1396.) A defeated initiative measure can have even less. As the majority acknowledge, fair employment legislation from other jurisdictions does not track California's statutory language. (See *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 888 [153 Cal.Rptr. 842, 592 P.2d 329], overruled on other grounds in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 313 [250 Cal.Rptr. 116, 758 P.2d 58]; cf. *Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 557 [147 Cal.Rptr. 165, 580 P.2d 665] [Legislature presumed to intend like interpretation be given identical statutory language].) And while language in an employer pamphlet prepared by the FEHC possibly in 1961 may have guided the Commission's own interpretation of section 12926(c), such a document does not typically inform legislative enactments. (See generally 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 96, pp. 149-150.)

[2]For example, at least one commentator acknowledged, "Precisely how this rule [interpreting 'regularly'] is to be applied in practice is not yet determined." (Tobriner, *California FEPC* (1965) 16 Hastings L.J. 333, 343; see maj. opn., *ante,* p. 238.) Subsequent administrative construction is equally ambiguous: the pertinent regulation states an "employer" is one employing five or more individuals "for each working day" (Cal. Code Regs., tit. 2, § 7286.5,

12926(c) or its predecessor.[3] (Cf. *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 742-743 [248 Cal.Rptr. 115 [755 P.2d 299] [staff opinion distributed only to select committee members not evidence of legislative intent].)

The Commission's decisions applying the statute and related regulation (Cal. Code Regs., tit. 2, § 7285.1, subd. (a)) might provide some insight: " 'Consistent administrative construction of a statute over many years, particularly when it originated with those charged with putting the statutory machinery into effect, is entitled to great weight and will not be overturned unless clearly erroneous.' [Citations.]" (*City of Los Angeles* v. *Public Utilities Com.* (1975) 15 Cal.3d 680, 696 [125 Cal.Rptr. 779, 542 P.2d 1371].)[4] Even assuming two decisions from 1983 and 1984 satisfy the standard for consistency and longevity, however, I am unpersuaded by the Commission's superficial and facile analysis, which makes no attempt to grapple with the terms of the statute.

The first case, *Dept. Fair Empl. & Hous.* v. *Travel Express, supra,* No. 83-17, FEHC Precedential Decisions 1982-83, CEB 16, pages 3-5, relies solely on one federal district court decision interpreting "employer" as defined in title VII (42 U.S.C. § 2000e(b)). (*Pascutoi* v. *Washburn-McReavy Mortuary* (D.Minn. 1975) 11 Fair Empl. Prac. Cas. (Bur. Nat. Affairs) 1325, 1326.) The federal statute provides that a person comes within the purview of the Equal Employment Act "who has fifteen or more employees for each working day . . . ." (*Ibid.*) Effectuating the remedial purpose of the act and according great deference to administrative implementation thereof, the federal court determined that Congress intended to bring both full-time and part-time workers within this definition and that therefore the number of persons on the payroll, not the number working any particular day, controlled. (*Id.,* at p. 1327.) On this limited basis and citing its own mandate to "give[] a broad sweep to the definition of 'employer,' " the Commission similarly concluded that the number of persons on an employer's payroll was

subd. (a)(1)); however, the FEHC interprets the term to mean having five or more individuals "on the payroll." (*Dept. Fair Empl. & Hous.* v. *Travel Express* (1983) No. 83-17, FEHC Precedential Decs. 1982-83, CEB 16, p. 4.)

[3] For example, most of the commentaries postdate adoption of Labor Code section 1413, the predecessor statute, to which the majority attach considerable significance as the original source of the term "regularly employing."

[4] The majority cite *City of Los Angeles* v. *Public Utilities Com., supra,* 15 Cal.3d 680, 696, and *Wotton* v. *Bush* (1953) 41 Cal.2d 460, 466 [261 P.2d 256], for the proposition that "the court will look . . . to administrative construction reasonably contemporaneous with the law's adoption in order to ascertain the intent of the Legislature in using the phrase." (Maj. opn., *ante,* p. 234.) However, Commission decisions in 1983 and 1984 can hardly be considered "contemporaneous" with enactments in 1959 and 1980, particularly when their analysis does not reflect on any original legislative understanding. (See 2B Sutherland, Statutory Construction (5th ed. 1992 rev.) § 49.08, p. 67.)

dispositive of its jurisdiction. (*Dept. Fair Empl. & Hous.* v. *Travel Express*, *supra*, No. 83-17, FEHC Precedential Decs. 1982-1983, CEB 16, p. 4].)

In my view, this determination is "clearly erroneous" and not entitled to any weight or deference.[5] The Commission attempted no critical analysis of the actual words at issue. Regardless of a perceived "legislative directive to liberally interpret the act" (*Dept. Fair Empl. & Hous.* v. *Travel Express*, *supra*, No. 83-17, FEHC Precedential Decs. 1982-1983, CEB 16, p. 4), the language of the statute itself must initially inform its construction. The Commission failed to recognize this overarching mandate and in drawing so heavily on *Pascutoi, supra*, ignored a critical distinction in the wording of the federal and state code provisions. I see a substantial difference between defining an employer under the federal act as one who "has" a given number of employees and under the state scheme as one who is "regularly employing" such persons. In this context, "has" is essentially equivalent to "employing";[6] and adopting the federal analysis renders "regularly" superfluous.

The Commission attempts no explanation for relying solely upon one federal decision construing dissimilar statutory language. An affinity of remedial purpose cannot justify a flagrant disregard for the integrity of state law and administrative jurisdiction. Moreover, under the Commission's own regulations, "federal laws and their interpretations regarding discrimination in employment and housing are not determinative of the construction of these [FEHC] rules and regulations and the California statutes which they interpret and implement . . . ." (Cal. Code Regs., tit. 2, § 7285.1, subd. (b).)

The majority construction as well reads the qualifier "regularly" out of section 12926(c). One commonly understood meaning of "regularly" is "consistently" or "habitually" (see Webster's New World Dict. (3d college ed. 1988) p. 1131) or, as the majority suggest, not "intermittently." (Maj. opn., *ante*, p. 241.) Merely having an individual on the payroll bears no particular relation to the frequency or regularity of that person's job function. For example, a small business, such as a "Mom and Pop" grocery, may employ only two workers full time but need to supplement that work force for an additional period each day. For whatever reason, the proprietor may choose to hire three individuals, each of whom works one or two days each week, to fill the part-time position. Five persons would appear on the payroll, but not all of them would "regularly" report to work. Nevertheless,

---

[5]The second case, *Dept. Fair Empl. & Hous.* v. *Bee Hive Answering Service* (1984) No. 84-16, FEHC Precedential Decs. 1984-85, CEB 8, page 13, merely follows *Travel Express* and thus shares its analytical weakness, as discussed below.

[6]For present purposes, "employing" generally means "provid[ing] work and pay for" and "engag[ing] the services or labor of for pay; hir[ing]." (See Webster's New World Dict. (3d college ed. 1988) p. 445.)

under the majority's interpretation, the employer would come within the Commission's jurisdiction. Of course, by hiring only one or two individuals to work part time, the same employer could avoid jurisdiction even though the nature of the business and the number of job opportunities remained the same in both situations. Moreover, even an employer who restricted his or her payroll to only four full-time and part-time employees daily would become an "employer" for purposes of FEHC jurisdiction if he or she hired a bookkeeper to work two hours once a month.

Fixing jurisdiction according to the number of employees on the payroll provides the Commission with a bright line determinative; but at the same time, it creates vagaries for the employer that can only inure to the ultimate detriment of employees, particularly those who work part time, denied jobs by employers seeking to avoid FEHC jurisdiction. The majority's analysis neglects to consider any of these consequences or the potentially wide-ranging impact on both employers and employees. (See *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387.) Implementation of the Commission's mandate to rectify and eliminate discriminatory practices in the workplace should enhance not defeat the primary goal of maximizing employment opportunities. (Cf. Gov. Code, § 12920.)

To avoid the anomalous results threatened by the majority interpretation while still effectuating the underlying remedial intent of the Legislature, I would construe section 12926(c) to invoke jurisdiction based upon the number of persons working each day. In other words, if five employees report for work every day, then the employer is subject to the Fair Employment and Housing Act irrespective of the number of hours worked. This approach provides an equally dispositive definition of "employer" but focuses more realistically on the size of the enterprise potentially subject to the Commission's jurisdiction, a matter clearly of legislative concern in providing an exemption.[7] (See also Tobriner, *California FEPC*, *supra*, 16 Hastings L.J. at p. 342 ["the framers [of the Fair Employment and Housing Act] were interested primarily in attacking protracted, large-scale discrimination by important employers and strong unions"].) It also gives small employers a

[7]The majority imply plaintiff's business should come within the Commission's jurisdiction despite its relatively small-scale nature because California has 24,000 dentists and the "number of employment opportunities is, therefore, quite large." (Maj. opn., *ante*, p. 242.) I fail to discern the logic of this observation. These professionals do not function as a single business entity and may or may not engage in similar employment practices. Hence, their collective job availability seems of little relevance in determining whether subjecting them to the Fair Employment and Housing Act would have any practical impact. More significantly, in response to the majority's interpretation of section 12926(c), some practitioners may, as plaintiff might well, eliminate part-time positions to avoid jurisdiction, with obvious negative consequences for employees.

measure of control in structuring their work force. If an employer chooses to hire five part-time workers for each day's work rather than three full-time ones, he or she has impliedly agreed to submit to the FEHC's jurisdiction by virtue of that business decision. In my view, this result more accurately explicates section 12926(c) and more reasonably effectuates the purpose of the statutory scheme consistent with the underlying legislative goal of effecting compliance and remediating employment discrimination.

In the instant case, the Commission clearly should not have exercised jurisdiction because plaintiff scheduled five or more persons to work on only two business days. Accordingly, I would reverse the contrary determination of the Court of Appeal.