[No. B087694. Second Dist., Div. Five. Apr. 26, 1995.]

SCOTT D. MATTHEWS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Real Party in
Interest.

COUNSEL

Lewis W. Boies, Jr., and Michael G. Homeier for Petitioner.

No appearance for Respondent.

James E. Holst, Christopher M. Patti, McKenna & Cuneo, Joel P. Kelly and Cynthia Beckwith for Real Party in Interest.

OPINION

GODOY PEREZ, J.—Petitioner is the plaintiff in a superior court action against his former employer, the Regents of the University of California (Regents), and several individual defendants, alleging he was the victim of sexual harassment in violation of the Fair Employment and Housing Act (FEHA). (Gov. Code, § 12900 et seq.)[1] The individual defendants demurred to petitioner's amended complaint on the ground that they could not be held personally liable for damages under the FEHA, which confines such liability to the offending party's employer. We hold that these defendants, all supervisory personnel who were aware of, and at times participated in, the

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

unlawful conduct, are "persons" subject to personal liability for sexual harassment under the FEHA.

## FACTS AND PROCEDURAL HISTORY[2]

Petitioner was employed as a principal admitting clerk at the Emergency Medicine Center at the University of California, Los Angeles (UCLA). Petitioner, a heterosexual male, contends he was subjected to verbal and physical sexual harassment by his homosexual male coworkers, including his immediate supervisors, defendants A. J. Gonzales and Jorge Benitez.

Shortly after petitioner completed his job training, many of petitioner's coworkers began to subject him to verbal and physical sexual harassment because of his heterosexual orientation. The verbal sexual harassment included "sexual advances, propositions for sexual relations, and lewd, vulgar and lascivious comments of both a sexually explicit or implicit nature." The physical sexual harassment included "male co-workers brushing and/or rubbing their bodies, in particular their genitals and buttocks, against [petitioner's] person, touching, stroking, and caressing [petitioner's] neck, back, and arms, and numerous attempts to give [petitioner] massages." Petitioner was told by coworkers that his position as principal admitting clerk was usually occupied by male homosexuals, and was "commonly known as a 'gay' job."[3]

Petitioner's attempt to rebuff these sexual advances and comments angered his coworkers, particularly his supervisors Gonzales and Benitez, who responded by redoubling their efforts. When his working environment became intolerable, petitioner arranged a meeting with the medical director of the emergency medicine center, defendant Dr. Marshall Morgan. Dr. Morgan told petitioner he had become aware of the "rampant and ongoing sexual harassment" in the emergency medicine center workplace long before petitioner complained. However, Dr. Morgan stated he was leaving on vacation and petitioner would have to speak with defendant Linda DaPar, the center's administrative director.

Initially, DaPar refused to meet with petitioner, but eventually did so at his insistence. The meeting was conducted in a "hostile, threatening and condescending manner." DaPar characterized the harassment of which petitioner complained as "trivial and insignificant," and "belittled [petitioner's]

---

[2]The facts are taken from petitioner's amended complaint. In reviewing the sufficiency of a complaint against a general demurrer, we treat the demurrer as "admitting all material facts properly pleaded." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

[3]Of the 15 principal admitting clerks supervised by Gonzales and Benitez, 8 were male, and petitioner was the only heterosexual male.

experiences and reactions." DaPar refused to take any corrective action in response to petitioner's complaints. Despite the fact that DaPar had assured petitioner their conversation would remain confidential, she immediately telephoned Gonzales and told him petitioner had accused him, Benitez and other coworkers of sexual harassment. Because of this breach of confidentiality, and the fact that petitioner had initiated an investigation by UCLA's labor relations manager, petitioner was thereafter subjected to the "silent treatment" by Gonzales, who refused to speak to him at all, and Benitez, who spoke to him only about work-related matters. Petitioner's coworkers either shunned him altogether or increased their sexual harassment of him because he was a "snitch," a "fink," and a "complainer who was just trying to get his supervisors fired."

Gonzales and Benitez continued to "encourage, condone and approve of" the increased harassment. Defendants also subjected petitioner to disparate treatment by changing his work schedule and granting preferential treatment to a more recently hired worker, who petitioner believed was homosexual.[4]

Petitioner, a pre-med student, enjoyed the job itself and viewed it as an excellent opportunity to get experience in the medical field. Due to the hostile work environment, however, petitioner was unable to perform his duties, and eventually took a leave of absence, from which he never returned. Petitioner alleges that he was constructively discharged due to defendants' unlawful employment practices.

After receiving a "right to sue" letter from the Department of Fair Employment and Housing, petitioner filed this action against the Regents, Dr. Morgan, DaPar, Gonzales and Benitez. (Petitioner did not name any of his nonsupervisory coworkers as defendants.) The amended complaint contains seven causes of action, four of which allege violations of the FEHA for: (1) sexual harassment by creation of a hostile work environment; (2) retaliation; (3) constructive discharge; and (4) disparate treatment.[5]

The individual defendants demurred to the FEHA causes of action on the ground that the FEHA does not impose individual liability.

---

[4]In October, 1993, petitioner filed a charge with the Equal Employment Opportunity Commission (EEOC). In January, 1994, the EEOC concluded that petitioner had in fact been subjected to "gender harassment in the workplace." In response, UCLA initiated a "variety of educational programs, which are now underway in the Emergency Medicine Center, to develop an understanding of how behaviors are perceived and in dealing with the challenges of a diverse workgroup."

[5]The non-FEHA causes of action are intentional and negligent infliction of emotional distress, and defamation. (Petitioner contends he was defamed by being characterized as a homosexual.)

On September 12, 1994, respondent court sustained the individual defendants' demurrers to the FEHA causes of action, without leave to amend, on the ground that the FEHA does not impose personal liability on individuals who violate its provisions. The court also sustained the demurrers of all defendants to the fourth cause of action for disparate treatment.

This petition was filed October 20, 1994. On October 27, 1994, we issued an alternative writ of mandate directing respondent court to vacate its orders sustaining defendants' demurrers to the first through fourth (FEHA) causes of action of the amended complaint, and enter a new and different order overruling the demurrers. Respondent court did not comply with the alternative writ. Defendants filed a return on December 29, 1994, and the matter was argued January 13, 1995.

### DISCUSSION

The FEHA establishes that freedom from job discrimination on certain grounds, including a person's sex, is a civil right. (§ 12921.) It declares that discrimination on the specified grounds is against public policy (§ 12920) and constitutes an unlawful employment practice. (§ 12940; *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 213 [185 Cal.Rptr. 270, 649 P.2d 912].) The public policy underlying the FEHA is "to prohibit harassment and discrimination in employment on the basis of any protected classification. Such conduct whether intentional or unintentional is a violation of the civil rights of California citizenry and has been shown to decrease productivity in the workforce. . . ." (Stats. 1984, ch. 1754, p. 6403.) The Legislature has further declared that ". . . [T]he practice of denying employment opportunity and discriminating in the terms of employment for such reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance [*sic*], and substantially and adversely affects the interest of employees, employers, and the public in general. . . . [¶] . . . [¶] It is the purpose of [the FEHA] to provide effective remedies which will eliminate such discriminatory practices." (§ 12920.)

On-the-job harassment is addressed specifically in section 12940. Subdivision (h)(1) of that section provides that it is an unlawful employment practice "[f]or an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, *or any other person*, because of race, religious creed, color, national origin,

ancestry, physical disability, mental disability, medical condition, marital status, *sex*, or age, to harass an employee or applicant. Harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment." (Italics added.) ■ Under subdivision (h)(3)(C) of section 12940, " 'harassment' because of sex" includes gender harassment. Sexual harassment by a member of the same sex constitutes gender harassment under the FEHA. (*Mogilefsky* v. *Superior Court* (1993) 20 Cal.App.4th 1409. )

It is also an unlawful employment practice "[f]or *any person* to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or attempt to do so" (§ 12940, subd. (g)), or "for *a person* to deny or to aid, incite, or conspire in the denial of the [civil] rights created by Section 51 or 51.7 of the Civil Code." (§ 12948, italics added.) Section 12965, subdivision (b), authorizes a civil lawsuit under the FEHA against "the *person*, employer, labor organization or employment agency" named in the complaint filed with the Department of Fair Employment and Housing as a precursor to the lawsuit. (Italics added.)

"[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

■ "The language of [the] FEHA indicates the Legislature intended to authorize administrative and civil complaints against a supervisor for harassment and retaliation. These unlawful employment practices can be committed by a 'person,' a term defined in [the] FEHA to include an individual. (§§ 12925, subd. (d), 12940, subds. (f) [and] (h).) Consistently, the enforcement provisions of [the] FEHA include a 'person' among those who may be accused in a FEHA action." (*Page* v. *Superior Court* (1995) 31 Cal.App.4th

1206, 1211-1212 [37 Cal.Rptr.2d 529].) The Fair Employment and Housing Commission, which adjudicates such complaints, has consistently held in harassment cases that individuals with authority to hire and fire or to control the conditions of employment, who either participate in the unlawful conduct, tacitly approve of the improper action, fail to take action upon learning of the discriminatory conduct, or participate in the decisionmaking process which is the basis of the discriminatory condition, are personally liable under the FEHA as agents of the employer. In determining whether an individual acted as an agent of the employer, the commission has looked "to the degree an entity or person significantly affects access to employment" and has held personally liable as agents of an employer "[individuals] having supervisory status who either themselves did the wrongful act or participated in the decision-making process which formed the basis of the discriminatory condition." (*DFEH* v. *Right Way Homes, Inc.* (1990) No. 90-16, FEHC Precedential Decs. 1990-1991, CEB 5.1, p. 15 [executive director who was "primary harasser" personally liable for racial harassment]; see also *DFEH* v. *Madera County* (1990) No. 90-03, FEHC Precedential Decs. 1990-1991, CEB 1, p. 27 [immediate supervisor with "significant power over [complainant's] employment status" and who sexually assaulted complainant was personally liable, but supervisor's superior, who took "strong action" immediately upon learning of sexual assault was not personally liable]; *DFEH* v. *Del Mar Avionics* (1985) No. 85-19, FEHC Precedential Decs. 1984-1985, CEB 16, pp. 24-25 [immediate supervisor who harassed complainant was personally liable]; *DFEH* v. *La Victoria Tortilleria, Inc.* (1985) No. 85-04, FEHC Precedential Decs. 1984-1985, CEB 13, p. 19 [supervisor and vice-president with power to hire and fire who sexually harassed employee was personally liable]; *DFEH* v. *Hart and Starkey, Inc.* (1984) No. 84-23, FEHC Precedential Decs. 1984-1985, CEB 9, pp. 17-19 [sole owner, president, and chief executive officer with power to hire and fire and who tacitly approved the sexual harassment was personally liable]; *DFEH* v. *Bee Hive Answering Service* (1984) No. 84-16, FEHC Precedential Decs. 1984-1985, CEB 8, pp. 14-16 [partner and co-owner of business with power to hire and fire and to determine working conditions who perpetrated the harassment was personally liable.].)

The commission's construction of the FEHA is entitled to great weight, particularly when it is consistent with the language utilized by the Legislature. In view of the commission's long-standing policy to permit sexual harassment complaints against individuals as well as employers, we assume the Legislature was aware of this construction when it enacted and amended the FEHA. (*Robinson* v. *Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 234-235, fn. 7 [5 Cal.Rptr.2d 782, 825 P.2d 767].) Had the Legislature intended for the term "person" to apply only to the employer, it could have amended the FEHA to absolve individual persons of liability under the act.

The fact that the reference to "person" or "persons" survived several amendments to the FEHA is consistent with the Legislative mandate that the FEHA be " 'construed liberally for the accomplishment of the purpose thereof.' " (*Robinson, supra,* 2 Cal.4th at p. 243.)

Our conclusion is also supported by case law interpreting the provisions of the FEHA relating to sexual harassment. In determining the merits of the petition, we reviewed a considerable number of FEHA cases in which liability was imposed upon individuals who violated the act. In none of these cases was it argued that the individual defendants should *not* be held personally liable, and the courts which decided these cases appear to have assumed such liability. (See, e.g., *Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 71 [276 Cal.Rptr. 130, 801 P.2d 373] [plaintiffs sued a physician and his medical corporation for sexual harassment by the doctor]; *Kelly-Zurian* v. *Wohl Shoe Co.* (1994) 22 Cal.App.4th 397 [27 Cal.Rptr.2d 457] [plaintiff sued employer and former supervisor after enduring several years of sexual advances, verbal abuse and unwanted sexual contact by the supervisor]; *Mogilefsky* v. *Superior Court, supra,* 20 Cal.App.4th 1409 [action for same-gender sexual harassment against employer and supervisor]; *Accardi* v. *Superior Court* (1993) 17 Cal.App.4th 341, 345-347 [21 Cal.Rptr.2d 292] [former police officer sued the City of Simi Valley and individual defendants for sexual harassment]; *Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 599 [262 Cal.Rptr. 842] [plaintiffs sued individual doctors, hospital officers, directors and board members in sexual harassment case].)

In the present case, petitioner has pleaded facts which, if true, would subject the individual defendants to liability under the FEHA. First, petitioner has alleged that his direct supervisors Gonzales and Benitez participated personally in acts which constituted an unlawful employment practice under section 12940, subdivision (h)(1). The other individual defendants are persons who allegedly aided or abetted in the proscribed acts, in violation of section 12940, subdivision (g).

"When the workplace is permeated with discriminatory intimidation, ridicule and insult that is ' "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," ' the law is violated." (*Kelly-Zurian* v. *Wohl Shoe Co., supra,* 22 Cal.App.4th at p. 409, citing *Harris* v. *Forklift Systems, Inc.* (1993) 510 U.S. __, __ [126 L.Ed.2d 295, 301, 114 S.Ct. 367].) Unlike discrimination in hiring, the ultimate responsibility for which rests with the employer, sexual or other harassment perpetrated by a supervisor with the power to hire, fire and control the victimized employee's working conditions is a particularly

personal form of the type of discrimination which the Legislature sought to proscribe when it enacted the FEHA. Our holding that the responsibility for such acts must be borne both by the offender as well as the employer who tolerates the offense is consistent with the Legislature's intent to provide "effective remedies which will eliminate such discriminatory practices."

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order of September 12, 1994, sustaining, without leave to amend, defendants' demurrers to the first through third causes of action of plaintiff's amended complaint, and enter a new and different order overruling the demurrers as to those causes of action.

Turner, P. J., and Grignon, J., concurred.

A petition for a rehearing was denied May 17, 1995, and the opinion was modified to read as printed above.