[No. 25519.   Department One.   December 19, 1935.]

THE WESLEY FOUNDATION AT SEATTLE, *Respondent,* v.
KING COUNTY *et al., Appellants.*[1]

*Warren G. Magnuson* and *David J. Williams,* for appellants.

*Stratton & Kane, Herbert S. Little, Cyril D. Hill,* and *Eugene W. Bell,* for respondent.

GERAGHTY, J.—The Wesley Foundation at Seattle, alleging that it was a nonprofit, nonsectarian corporation, brought this action to enjoin the defendants from taxing certain property owned by it and used in furtherance of the purposes of its incorporation. After trial on the merits, the court found that the Foundation was in fact nonprofit and nonsectarian, and organized under the laws of the state for religious purposes; and that its property in question was used for such purposes and for the educational, benevolent and social departments growing out of, and related to, its religious work.   Judgment was accordingly entered enjoining the defendants as prayed for, from which they prosecute this appeal.

[1]Reported in 52 P. (2d) 1247.

The land involved lies adjacent to the campus of the University of Washington and is improved with a wooden building in which the respondent carries on its various activities. The purposes of the Foundation are set forth in its articles of association as follows:

"The corporation shall have no capital stock and shall be an organization whose functions and services shall be of a nonsectarian character, and shall be constituted for the purpose of providing for the religious, educational, social, charitable and moral welfare of the students of the University of Washington, and shall make no discrimination against any person on account of creed, race, or other distinction whatsoever."

The Foundation has been in existence for some twelve years. Rev. John R. Sasnett, its director, testified that the Wesley Foundation was organized for the moral, spiritual and religious welfare of students—men and women—attending the University. It was felt by those who organized it that there was a growing trend toward a nonsectarian emphasis in religious activities in connection with public education, and it was for the furtherance and promotion of that movement and to provide personal counsel in religious, moral and social problems to students on the campus that the Foundation was formed. The building is used wholly for student activities, except the portion used by the director himself for living. There are lobbies, library rooms, committee rooms, recreation rooms, rooms for the administrative staff, and a small chapel used for prayer or worship by students. The building itself is known as Wesley House, and, other than this name, has no sign or symbol indicating its purpose or implying any sectarian use.

While the Foundation receives some support from the Methodist Church, with which its management has some organic connection, it does not restrict its ser-

14

vices to students professing adhesion to that denomination. Mr. Sasnett, the director, is himself an ordained minister of the Methodist Episcopal Church, though not employed as a minister or pastor, but as one competent to direct the activities of the Foundation.

The facilities of the Foundation are used by a large number of students of both sexes. There are two organized groups of students, one of men and one of women. The men have what is called the "Wesley Club," and the women, "Kappa Phi." These student clubs are under the general supervision and authority of the Foundation, and membership in them is not strictly limited to members of the Methodist Church.

While the Foundation is in form nonsectarian, and the testimony would indicate that it is so in fact in respect of its student activities, it is quite probable that it draws more from young men and women of Methodist antecedents. This would naturally be so and would not necessarily give the institution a sectarian complexion. Several other denominations maintain like institutions near the University campus. The general plan and function of these various groups in their relation to the university life of the students was testified to by Mr. Sidney David Spear, assistant dean of men at the University. Quoting from his testimony:

"I have had about the same sort of contacts with the Y. M. C. A. as, we will say, Wesley Club for instance, both as a student and as a member of the staff, and for about the same length of time. Both of these institutions are an integral part of the University community, not as religious bodies but as University organizations, very definitely. As far as their membership is concerned and their interests and activities and their general outlook is concerned, it seems to me they

are rather definitely members of the University community rather than say, of a religious community, and their activities are of course religious and spiritual as well as educational and in a large measure I think they fill in a needed niche so far as personnel work is concerned that the University itself does not perform.

"To the best of my knowledge the activities of Wesley Foundation have not been of a denominational character or proselyting nature on behalf of the Methodist Church. Aside from the fact that the Foundation is probably regarded as religious in origin or support, it seems to be that functionally it would not be classified as an organization that has participated in primary religious or denominational promotions. . . .

"I would say that Wesley Foundation is nondenominational functionally. To the best of my knowledge and belief the relationship between the students and the club is social and religious rather than Methodist. Once every two weeks I come in contact with the club directly; that is perhaps of an evening I will drop in, and get in touch with Dr. Sasnett by telephone, and constantly with students who are active in the club. The work they stress, if I am competent to testify, has been largely nonreligious. My opinion is that religious work there is not unnoticed but it is not dominant. I believe Kappa Phi is a Greek Letter organization of the Methodist Sorority.

"In its activities Wesley Club does not give preference to Methodist students. I do not know whether they circularize Methodist students with pamphlets and do not circularize others with pamphlets. . . . There are a number of clubs adjunct to the campus sponsored by respective church groups. Westminster Club for one. That is sponsored, roughly speaking, by the Presbyterian group. There is the Newman Club, or Catholic group. I do not know specifically what the charter of each of these clubs provides as to who sponsors them. I know generally that they are regarded as being sponsored by the church groups. I doubt if they are considered part of the churches who sponsor them. I think they are primarily considered as student clubs."

The services rendered by the Foundation are free of cost to the students. In the main, the larger part of the cost is borne by the Methodist organization. Some contributions are received from private sources.

██ Respondent claims exemption under the provisions of Rem. 1935 Sup., § 11111 [P. C. § 6882-7], from which we quote the portion applicable here.

"The following property, to the extent herein limited, shall be exempt from taxation:

"First. All lands used exclusively for public burying grounds or cemeteries, all churches built and supported by donations whose seats are free to all, and the ground whereon such churches are built, not exceeding five acres in area upon which any cathedral or church of any recognized religious denomination is or shall be built, together with a parsonage: *Provided,* That in any case the area exempted shall include all ground covered by such churches and parsonages and the structures and ground necessary for street access, light and ventilation, but the area of unoccupied ground exempted in connection with both church and parsonage under this proviso shall not exceed the equivalent of 120 x 120 feet, except as hereinabove mentioned. The parsonage need not be on land contiguous to the church property if the total area exempted does not exceed the area above designated: *Provided,* That such grounds are used wholly for church purposes and not otherwise; also the property of other nonsectarian organizations or associations, organized and conducted primarily and chiefly for religious purposes and not for profit, which shall be wholly used, or to the extent solely used for the religious purposes of such associations, or for the educational, benevolent, protective or social departments growing out of, or related to, the religious work of such associations; also the property of non-profit organizations or associations engaged in character building in boys and girls under twenty-one years of age, to the extent such property is necessarily employed and devoted solely to the said objects: *Provided,* Such

purposes are for the general public good and such properties are devoted to the general public benefit.''

In *Norwegian Lutheran Church v. Wooster,* 176 Wash. 581, 30 P. (2d) 381, where we had under consideration a similar claim for exemption of property owned by the Norwegian Lutheran Church, we said:

''As we see it, sectarianism has, therefore, nothing to do with the question here involved. Whether the owner be sectarian or nonsectarian, the use to which the property is devoted determines the question of exemption from taxation.''

We think that case decisive of the issue involved in this.

As we have seen, the Wesley Foundation itself is organized as a nonprofit, nonsectarian corporation, and the property involved is in the name of this corporation. But if it were otherwise, and the property belonged, in fact, to the Methodist Church, its status as exempt property would be the same. So long as the property is devoted to the uses contemplated by the statute, it is entitled to exemption, regardless of the sectarian character of the owner. That the activities of the Wesley Foundation are nonsectarian in a proper sense, we have no doubt.

The statute itself does not define sectarian or nonsectarian. In its origin, the word sectarian had an invidious implication, but it has long been used in this country as approximating in meaning the word denominational. Now, a candid reading of the record in this case does not disclose any evidence of the use of the Foundation by the Methodist Church for propoganda or proselyting. Its function is to encourage men and women coming within the scope of its influence to embrace some form of religious life, without specially emphasizing the Methodist Church. Doubtless, the existence of the Foundation, operating under

18

Methodist auspices, may tend to make students of Methodist antecedents more at home there, but, beyond this, the sectarian aspect is negligible.

The judgment is affirmed.

BLAKE, TOLMAN, MITCHELL, and STEINERT, JJ., concur.