[No. 5817-4-III.  Division Three.  May 8, 1984.]

DOREEN M. HAZEN, ET AL, *Appellants,* v. CATHOLIC CREDIT UNION, *Respondent.*

*David H. Putney* and *Elofson, Vincent, Hurst, Crossland, Menke & Putney,* for appellants.

*Vincent J. Beaulaurier* and *Lyon, Beaulaurier, Weigand, Suko & Gustafson,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *Winslow Whitman, Assistant,* amici curiae..

MUNSON, C.J.—Doreen M. Hazen and Kathleen F. Keeper appeal from a summary judgment dismissing their employment discrimination action against the Catholic Credit Union. They worked as tellers at the Credit Union and brought this sexual harassment action for alleged misconduct by the Credit Union's manager. The trial court granted summary judgment on their RCW 49.60 claim,[1] on the ground the Credit Union is excepted from the statutory definition of "employer". RCW 49.60.040 provides in part:

"Employer" includes any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons, and does not include any religious or sectarian organization not organized for private profit;

We hold the Credit Union is not a religious or sectarian organization and is therefore subject to RCW 49.60 as a matter of law.

Viewed in the light most favorable to plaintiffs as non-moving parties, the facts are as follows. The Credit Union was founded in the 1950's in connection with a popular trend in the Roman Catholic Church to financially aid

---

[1]Hazen's and Keeper's claim under Title 7 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, was dismissed on the ground the Credit Union employs fewer than 15 people and is therefore exempt from Title 7. 42 U.S.C. § 2000e(b). This dismissal has not been appealed.

members. The Credit Union's incorporators were all Catholic laymen. The bylaws restate the general purpose for any Washington credit union, as set forth in RCW 31.12.020:

> The purpose of this credit union [is] to promote thrift among its members and to create a source of credit for them at legitimate rates of interest for provident, productive and educational purposes.

RCW 31.12.080 requires credit unions to be organized around a "common bond of occupation or association, or . . . a well defined neighborhood, community or rural district." The "common bond" between Credit Union members is broader than Roman Catholicism:

> Membership shall be open to all parishioners of all Roman Catholic parishes and all *employees of Catholic Institutions* within Yakima County, Washington: Fraternal organizations, partnerships or corporations composed of members; *employees of this credit union;* and *members of the immediate family of any member* in good standing, provided they live in the same household or receive a majority of their support from the family. Once a membership has been granted, such member's eligibility shall thereafter be continuous.

(Italics ours.)

The Credit Union has no organizational, structural, or financial ties to the Roman Catholic Church or any diocese. The Diocese of Yakima receives no reports from the Credit Union and has no input regarding its operational, business, financial or management decisions. The Roman Catholic Church receives no funds from the Credit Union. The Credit Union has made loans to individual parishes, but those loans were made on the same financial terms and qualifications as are applied to all loan applicants.

The Credit Union's board of directors are chosen for their financial, business, or other management skills and not for their religious qualifications. No member of the Catholic clergy has ever served as a director of the Credit Union. If a priest were to be selected as a director, his selection would be based upon his business or financial skills and not upon his religious contribution. Although

most of the Credit Union's employees are Catholic, they are hired because of their ability, not religious affiliation. Neither plaintiff is a member of the Roman Catholic Church.

The Credit Union does not provide any religious counseling; it advertises only as an organization where members may obtain financial assistance. Although its board meetings open and close with prayer, the Credit Union conducts no prayer meetings, worship services, or any liturgy of the Roman Catholic Church.

The Credit Union operates as any other credit union organized under RCW 31.12. RCW 31.12.260 requires credit unions to invest their "capital, deposits, and surplus . . . in loans to members". RCW 31.12.310 permits credit unions to declare dividends from retained earnings, and to pay such dividends to members either in cash or to their accounts. The Credit Union's minutes and annual reports show it has in fact made money for its members. In 1981, the Credit Union entered the all–savers market. The dividend rate for its members increased from 4 percent in 1951 to 6¾ percent and 7 percent in 1981. It had income of $1,670,000 in 1981, and declared $990,481.73 in dividends to its members.

██ "Religious or sectarian organization" is nowhere defined in RCW 49.60. Statutes are to be construed according to ordinary and common meanings; absurd consequences are to be avoided. *Yakima First Baptist Homes, Inc. v. Gray*, 82 Wn.2d 295, 299–300, 510 P.2d 243 (1973). *Webster's Third New International Dictionary* and Black's Law Dictionary define "religious" in terms of manifesting devotion to a superior being through worship.

> [religious] . . . 1: relating to that which is acknowledged as ultimate reality: manifesting devotion to and reflecting the nature of the divine or that which one holds to be of ultimate importance: exemplifying the influence of religion: PIOUS, GODLY . . . 2: committed, dedicated, or consecrated to the service of the divine: set apart to religion . . . 3: of or relating to religion: concerned with religion: teaching or setting forth religion . . . *also*: SACRED, HOLY . . . 4 a: scrupulously and conscientiously faithful . . . b: FERVENT, ZEALOUS . . .

*Webster's Third New International Dictionary* 1918 (1966). Black's Law Dictionary 1161 (5th ed. 1979) similarly defines "religion":

> Man's relation to Divinity, to reverence, worship, obedience, and submission to mandates and precepts of supernatural or superior beings. In its broadest sense includes all forms of belief in the existence of superior beings exercising power over human beings by volition, imposing rules of conduct, with future rewards and punishments. Bond uniting man to God, and a virtue whose purpose is to render God worship due him as source of all being and principle of all government of things.

Similar definitions are also found in the *Oxford Dictionary of the English Language.*

█ "Sect" is roughly synonymous with religious denomination. *Visser v. Nooksack Vly. Sch. Dist. 506,* 33 Wn.2d 699, 207 P.2d 198 (1949); *Wesley Found. v. King Cy.,* 185 Wash. 12, 52 P.2d 1247 (1935), *overruled on other grounds in Corporation of the Catholic Archbishop v. Johnston,* 89 Wn.2d 505, 509, 573 P.2d 793 (1978).

We do not believe promoting thrift and providing a source of credit are manifestations of devotion to a superior being in a religious sense. In *Yakima First Baptist Homes, Inc. v. Gray, supra,* the court held the care of the aged is not a religious purpose within the tax exemption provided to organizations conducted for religious purposes. The court stated:

> Although the practice of charity, of kindness to other persons and in particular to the aged, and the practice of all of the virtues are acts encouraged by religious organizations generally, it cannot be said this is a religious purpose within the commonly accepted definitions of the word "religious". Without a religious purpose, respondent is not entitled to an exemption under RCW 84.36.030.

*Yakima First Baptist Homes, Inc. v. Gray, supra* at 301–02. Because the Credit Union is not religious, neither can it be sectarian, as that word has been defined by our courts.

Even if we were to agree with the trial court, we note the government may subject a religious organization to antidis-

crimination laws without running afoul of the free exercise or establishment clauses. *EEOC v. Pacific Press Pub'g Ass'n,* 676 F.2d 1272 (9th Cir. 1982); *EEOC v. Southwestern Baptist Theological Seminary,* 651 F.2d 277 (5th Cir. 1981), *cert. denied,* 456 U.S. 905, 72 L. Ed. 2d 161, 102 S. Ct. 1749 (1982); *EEOC v. Mississippi College,* 626 F.2d 477 (5th Cir. 1980), *cert. denied,* 453 U.S. 912, 69 L. Ed. 2d 994, 101 S. Ct. 3143 (1981); *Dolter v. Wahlert High Sch.,* 483 F. Supp. 266 (N.D. Iowa 1980). In fact, permitting a religious organization to discriminate on any basis, other than religion, may violate the equal protection and establishment clauses of the United States Constitution. *King's Garden, Inc. v. FCC,* 498 F.2d 51 (D.C. Cir.), *cert. denied,* 419 U.S. 996, 42 L. Ed. 2d 269, 95 S. Ct. 309 (1974). *See also Dolter v. Wahlert High Sch., supra.*

We further note the stated purpose of the Law Against Discrimination is to *fulfill* state constitutional civil rights provisions. RCW 49.60.010. The Legislature specifically found "discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." RCW 49.60.010. Our holding is in keeping with the directive that RCW 49.60 be liberally construed. *Lewis v. Lockheed Shipbuilding & Constr. Co.,* 36 Wn. App. 607, 613, 676 P.2d 545 (1984). Because we hold the Credit Union is not a religious or sectarian organization under RCW 49.60.040, we need not address whether the Washington Constitution, article 1, section 11 (amendment 34),[2] grants more protection to religion than the United States Constitution, amendment 1.[3]

---

[2]Const. art. 1, § 11 (amend. 34) states in part:

"Religious Freedom. Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state."

[3]U.S. Const. amend. 1 states in part:

508

Reversed and remanded for trial.

GREEN and MCINTURFF, JJ., concur.

Review denied by Supreme Court July 13, 1984.

"Congress shall make no law respecting an establishment of religion, or pro-
hibiting the free exercise thereof; . . ."