**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
**Plaintiff,**

**v.**

**PRESBYTERIAN MINISTRIES, INC., Defendant.**

**No. C90–1294M.**

United States District Court,
W.D. Washington.

March 19, 1992.

John Freeman Stanley, EEOC, Seattle, Wash., for plaintiff.

Arthur Sheridan Langlie, Presbyterian Ministries, Seattle, Wash., for defendant.

## ORDER GRANTING DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

McGOVERN, District Judge.

### SUMMARY OF FACTS

Plaintiff Jacqueline Brooks worked as a receptionist at Exeter House, a retirement home operated by Presbyterian Ministries, Inc. (PMI), from October 1985 until January 18, 1988 when she resigned. Plaintiff contends that PMI objected to the headcovering she began wearing in January 1988 and which she was required to wear as a Muslim; moreover, Plaintiff contends that PMI offered her no reasonable accommodation and failed to show undue hardship. Thus, Plaintiff contends that she was constructively discharged.

When Plaintiff was interviewed and ultimately hired as the receptionist at Exeter House, she was not asked what her religious beliefs were and she did not tell of her religious beliefs. It was explained to Plaintiff that Exeter House is operated as a Christian retirement home by the Presbyterian Church and the Administrator, Arlene Temple, specifically asked Plaintiff whether she could honor and support the Christian principles of Exeter House and comply with the provisions of the PMI personnel manual. Plaintiff said that she could. Plaintiff wore a wig during most of her employment. She wore a headscarf one day in 1986 and explained that her son had been playing with her wig and that she could not wear it that day.

On January 5, 1988, when Plaintiff returned to work after five months maternity leave, she was wearing a scarf on her head and informed Mrs. Temple that her church and her husband were requiring her to wear the Muslim headdress which covers all of the head and neck leaving only the face exposed. Mrs. Temple explained that wearing such a headdress was inappropriate for her position as the Exeter House receptionist, that it was contrary to the department dress code, and that it could not be worn on the job. Mrs. Temple stated that it was not objectionable if she wore it to and from work or if she continued to wear the wig. Plaintiff wore the headcovering again on January 6, 1988 and was allowed to remain at work while wearing it, but on subsequent days (January 7, 8, 11, 12, 13, 14, and 17) she wore a somewhat different headcovering and was asked to remove the headcovering or leave. Plaintiff reiterated the religious reasons for the headcovering, refused to remove it, and left the premises each day. Finally, Plaintiff submitted her resignation.

### ISSUE

No material facts are in dispute, and summary judgment is appropriate on the issue before the Court: whether PMI improperly discriminated against Plaintiff on a religious basis.

### ANALYSIS

The personnel manual, provided to employees as a part of the hiring process, sets forth the following pertinent provisions:

> It is our purpose to provide a Christian caring environment for our residents in a gracious home atmosphere so that their later years may be enjoyed in comfort and dignity.

.    .    .    .    .

### EMPLOYMENT QUALIFICATIONS AND REQUIREMENTS

1. Employees shall be persons who acknowledge the Christian purposes of Presbyterian Ministries, Inc. and agree to abide by and support them.

.    .    .    .    .

7. Employees shall keep themselves neat and clean and shall wear the uniform or other dress prescribed by the

rules of the department in which employed.

.    .    .    .    .

It is and shall be the policy of PMI that all facilities operated by the corporation shall be operated without discrimination on the basis of a person's age, sex, marital status, race, creed, color, or national origin.

.    .    .    .    .

After Plaintiff's departure, the personnel manual was revised. The dress code stated: "No attire, ornament or device shall be worn which would signify an article of faith or belief other than Christian." Another change stated that employees are required to be a member of a Christian church or to

> espouse during working hours no other religious preference, faith or belief other than the Christian faith and [not to] adorn himself or herself with any article of clothing or religious sign or symbol with regard to any faith other than the Christian faith.

Plaintiff contends that because PMI did not discriminate on the basis of religion—that it did not limit employees to co-religionists, *i.e.*, Christians—it may not take advantage of the limited exemption to Title VII provided at Section 702 (42 U.S.C. § 2000e–1, which provides:

> This title shall not apply ... to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

*EEOC v. Pacific Press Publishing Ass'n,* 676 F.2d 1272, 1276 (9th Cir.1982), is cited by both parties on the issue of the application of the § 702 exemption. That case provides a general discussion of the purpose of the exemption while liability for discrimination based on race, color, sex, or national origin is still prohibited for religious employers.

Section 702 is an exemption that applies to PMI under the circumstances of this case. It cannot be seriously disputed that the Christian nature of Exeter House was obvious from the most cursory view even before the modifications to the personnel manual. The manual stated forthrightly the Christian purposes of Exeter House and required employees to acknowledge and support them. Merely because PMI did not actively inquire into Plaintiff's religion does not provide a mechanism for an employee to subsequently begin to assert a non-Christian religious belief in a manner deemed inappropriate by PMI. Such a limited interpretation of the exemption would result in intolerable intrusions into the operation of a religious entity's own agencies.

Certainly, PMI may determine for itself what environment it seeks to provide in its agencies such as Exeter House. The employees' actions, attitudes, and appearances are obviously an important element in creating that environment. The receptionist position is important in conveying an initial first impression, and Exeter House must be free to determine the impression it wishes to convey; the receptionist may not dictate to PMI in this regard. Plaintiff is free to exercise her religion, but she may not do so on PMI premises in a way that PMI deems is contrary to its interest.

The § 702 exclusion does not limit its application to sectarian or ecclesiastical positions. Plaintiff describes the receptionist position as secular in nature, but such description is beside the point. The receptionist position is one located on PMI premises with a pervading theme of Christian mission. This concept is set forth in the statement of purpose from the personnel manual quoted above. A plaque in the lobby of Exeter House, adjacent to the receptionist's desk reads: "Exeter House. Dedicated to the ministry of providing a Christian home with care and concern for those in retirement. Presbyterian Ministries, Inc." It is PMI's right and prerogative to determine how its mission at Exeter House is to be carried out even though there may be employed persons whose jobs may be considered by some to be secular.

There is no violation of the Free Exercise Clause here. The recognition of the ex-

emption of § 702 will not impede the purpose of Title VII. Plaintiff remains free to exercise her religion; she simply may not impede PMI's religious exercise at Exeter House. The exemption merely allows PMI to operate its retirement home as it sees fit without any conflicting religion by symbol or otherwise garbling its message of Christianity.

Plaintiff argues that there is no violation of the Establishment Clause here with application of Title VII's prohibition of religious discrimination, because no prospective relief is sought. The Court disagrees. Even if it is conceded that the statute has a secular purpose, and that its primary effect is neither to advance nor inhibit religion, the third prong of the test is not met. Excessive government entanglement in religion would result here. The three-part test of excessive government entanglement considers the character and purpose of the institution, the nature of the intrusion, and the resulting relationship between the government and the religious authority. *See generally, EEOC v. Fremont Christian School,* 781 F.2d 1362 (9th Cir.1986) for a discussion of the tests. Excessive government entanglement results because: (a) The character and purpose of the institution is to provide a "Christian caring environment for our residents in a gracious home atmosphere so that their later years may be enjoyed in comfort and dignity." The Christian atmosphere is of primary importance to the institution. (b) If the § 702 exemption is not applied here, the statute would operate to allow any employee once hired to display non-Christian symbols or even proselytize. This would be a serious intrusion into Church affairs as it would adversely affect the Christian environment PMI seeks to create. (c) Thus, the resulting relationship between the government and the religious authority would be one whereby the government dictates that Exeter House must suffer the intrusion of non-Christian symbology into the Christian environment it seeks to create on its own premises. Certainly the § 702 exemption exists to prevent such intrusions and prevent an Establishment Clause violation.

Plaintiff argues that PMI has not demonstrated undue hardship, that the argument that the headcovering would provoke residents and send an anti-Christian, confrontational message is unavailing as it is merely a "conceivable, or hypothetical hardship." On the contrary, PMI's concern is one that goes to the heart of its program at Exeter House. PMI is concerned that its religious symbols and Christian environment not be compromised or perceived as ambiguous. Plaintiff, likewise, was adamant that she would not compromise her religious symbol. Religious symbology is of great importance to both Plaintiff and Defendant.

To afford Plaintiff the luxury of affecting her religious symbol within Exeter House, would be to allow diminishment of the Christian setting in the perception of PMI and to scoff at PMI's concern for such diminishment. Title VII certainly does not countenance this, and the § 702 exemption allows PMI to discriminate against competing religious symbols on its own premises to protect the religious environment at its institution. PMI appropriately cites *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Amos,* 483 U.S. 327, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987), for the proposition that the § 702 exemption alleviates significant governmental interference with the ability of religious organizations to define and carry out their religious missions. Moreover, PMI need not bear more than de minimis cost in accommodating an employee, *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 84–85, 97 S.Ct. 2264, 2276–77, 53 L.Ed.2d 113 (1977), and interference in PMI's ability to operate Exeter House to project an unambiguous Christian image and environment as it sees fit is more than a de minimis intrusion.

## CONCLUSION

PMI is exempted from the provisions of Title VII under Section 702. Title VII may not be construed to force a religious institution to countenance the display of religious symbols contrary to the image and environment that the institution wishes to create and maintain. To protect Plaintiff's exercise of her religion on the premises of

PMI's Exeter House, would be to favor her religious exercise over PMI's on PMI's own premises and to impermissibly interfere with PMI's operation of Exeter House. PMI justifiably considered Plaintiff's display of her own religious preference at the highly visible reception desk all the more inappropriate from its point of view.

PMI's Cross–Motion for Summary Judgment is GRANTED, and EEOC's cause of action is DISMISSED. Defendant PMI shall submit its motion for its costs and reasonable attorneys fees accompanied by a statement of authority therefore and documentation of amounts claimed. The Clerk of the Court shall enter judgment accordingly upon the Court's ruling on the Motion for Costs and Attorneys fees.