*1111
 
 Opinion
 

 WERDEGAR, J.
 

 The Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.)
 
 [1]
 
 bars discrimination by employers on several enumerated bases. Under section 12926, subdivision (d) (the religious-entity exemption), the term “employer” specifically excludes “a religious association or corporation not organized for private profit.”
 
 [2]
 
 In
 
 McKeon v. Mercy Healthcare Sacramento
 
 (1998) 19 Cal.4th 321 [79 Cal.Rptr.2d 319, 965 P.2d 1189]
 
 (McKeon),
 
 we determined that a hospital controlled by the Roman Catholic Church could invoke the religious-entity exemption even though not officially incorporated as a nonprofit religious corporation under Corporations Code section 9110 et seq. No other factual or legal arguments were at issue in
 
 McKeon.
 

 In the present case, plaintiff asserts that her former employer, a different religiously affiliated hospital, fails to qualify for the religious-entity exemption under its previous incarnation because the hospital’s purpose and affiliations are inadequately religious.
 
 [3]
 
 We disagree.
 

 I. Factual and Procedural History
 

 Plaintiff, a nurse at defendant Methodist Hospital of Southern California (Hospital), was discharged in 1991 on the grounds that she had failed to
 
 *1112
 
 return to work after the expiration of her medical leave, despite having received five extensions of time to do so. Plaintiff was 50 years old at the time of her discharge. She filed a lawsuit against Hospital and her immediate superior, alleging, among other things, that her termination was based on her age. While she did not seek direct relief under FEHA, she did allege that her termination violated California’s fundamental public policy against age discrimination as expressed in FEHA. (See
 
 Tameny v. Atlantic Richfield Co.
 
 (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]
 
 (Tameny).) Tameny
 
 claims permit wrongful termination damages when a termination is undertaken in violation of a fundamental, substantial and well-established public policy of state law grounded in a statute or constitutional provision. (See
 
 Gantt
 
 v.
 
 Sentry Insurance
 
 (1992) 1 Cal.4th 1083, 1094-1095 [4 Cal.Rptr.2d 874, 824 P.2d 680].)
 

 Hospital moved for summary judgment, arguing it is a religious corporation not organized for private profit and is thus expressly excluded from FEHA under the religious-entity exemption. Relying on our decision in
 
 Jennings v. Marralle
 
 (1994) 8 Cal.4th 121, 135-136 [32 Cal.Rptr.2d 275, 876 P.2d 1074], in which we held that a FEHA-based
 
 Tameny
 
 claim would not lie against an employer who is specifically exempt from the scope of FEHA, Hospital argued that, because no state law other than FEHA proscribes age discrimination and Hospital is not subject to FEHA restrictions, no public policy basis exists for a
 
 Tameny
 
 claim against Hospital.
 

 In support of the motion for summary judgment, Hospital presented evidence of its creation by and affiliation with the United Methodist Church. Under Hospital’s articles of incorporation, all of its assets are irrevocably dedicated to charitable and religious purposes, and upon its dissolution those assets revert to the United Methodist Women. Hospital’s directors are elected annually at a meeting of the Woman’s Society of Christian Service of the Southern California-Arizona Conference of the Methodist Church. Under Hospital’s bylaws, a majority of its board members must be members of the United Methodist Church and one member of the board must be a Methodist minister. The president of the United Methodist Women is also a board member by virtue of her office. In lieu of shareholders, Hospital has “members” who vote on significant issues affecting Hospital. The only persons eligible to be members are those individuals currently serving on the board of directors and those individuals currently serving on the Executive Committee of United Methodist Women.
 

 A Methodist chaplain ministers to the religious needs of patients in the Hospital, and Hospital broadcasts a daily in-house sermon for the benefit of
 
 *1113
 
 patients, staff and visitors. Hospital abides by the requirements of the Health and Welfare Ministry of the United Methodist Church and is accredited by the Certification Council of the United Methodist Church.
 

 In addition, Hospital demonstrated it is exempt from federal taxation as a corporation “organized and operated exclusively for religious, charitable ... or educational purposes” as set forth in 26 United States Code section 501(c)(3) under an Internal Revenue Service ruling in effect since 1937. Hospital also noted that several years earlier the Fair Employment Practice Commission (the predecessor to the Fair Employment and Housing Commission (FEHC)) had dismissed a discrimination complaint against Hospital after determining that it lacked jurisdiction over the complaint.
 

 Plaintiff opposed the summary judgment motion, arguing triable issues of fact remain as to whether Hospital is actually a “religious association or corporation not organized for private profit” within the meaning of section 12926. She asserted that Hospital is ineligible for the religious-entity exemption because it is a secular business involved in health care, not an organization dedicated to religious indoctrination or propagation of the Methodist faith. In factual support, she cited the testimony of Hospital’s administrative director of human resources, who admitted that Hospital’s “business” is “[cjaring for the health care needs of the community” and is not specifically related to religion. Plaintiff further relied on Hospital’s articles of incorporation, which provide that the purposes of the corporation are to “establish, erect and maintain a hospital; to buy, own, hold and sell real estate; to receive, by donation or otherwise any real or personal property that may be deemed advantageous, desirable or necessary; to lease, mortgage, sell, or otherwise dispose of property; to establish and maintain a training school for nurses; to receive endowments and to invest the same; to establish and maintain free beds for those unable to pay hospital charges; to maintain a dispensary; to establish and maintain branch hospitals and sanitariums; and to receive property and to pay annuities.” In plaintiff’s view, these are not religious purposes. Plaintiff also noted that Hospital does not require its patients or employees to profess the Methodist faith, nearly half the members of the board may be non-Methodist, and only one member of the board need be a Methodist minister. Plaintiff opined that this evidence created a triable issue of fact as to whether Hospital is truly a “religious association or corporation not organized for private profit” as that term was intended by the Legislature in enacting section 12926.
 

 The trial court concluded the evidence did not create a triable issue of fact as to whether Hospital is a “religious association or corporation not organized for private profit” within the meaning of section 12926. The court
 
 *1114
 
 therefore granted the motion for summary judgment and entered judgment for Hospital. The Court of Appeal affirmed the judgment. We granted review.
 

 II. Discussion
 

 Section 12940, subdivision (a) prohibits employers from discriminating against certain protected classes in compensation, terms, conditions or privileges of employment. Section 12926, subdivision (d) provides: “ ‘Employer’ includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, . . . except as follows: [¶] ‘Employer’ does not include a religious association or corporation not organized for private profit.” At the time applicable to this action, the statute contained no other relevant definitions. (Stats. 1990, ch. 15, § 1, p. 87.)
 

 We have previously stated general principles for interpreting the provisions of FEHA. “Because the FEHA is remedial legislation, which declares ‘[t]he opportunity to seek, obtain and hold employment without discrimination’ to be a civil right (§ 12921), and expresses a legislative policy that it is necessary to protect and safeguard that right (§ 12920), the court must construe the FEHA broadly, not. . . restrictively. Section 12993, subdivision (a) directs: ‘The provisions of this part shall be construed liberally for the accomplishment of the purposes thereof.’ If there is ambiguity that is not resolved by the legislative history of the FEHA or other extrinsic sources, we are required to construe the FEHA so as to facilitate the exercise of jurisdiction by the FEHC. [Citation.]”
 
 (Robinson v. Fair Employment & Housing Com.
 
 (1992) 2 Cal.4th 226, 243 [5 Cal.Rptr.2d 782, 825 P.2d 767]
 
 (Robinson).)
 
 Not all statutory interpretations, of course, are equally reasonable: the mere fact that one may make a theoretical and unsupported argument to broaden the scope of the statute or to narrow its exceptions does not necessarily mean the language at issue is legitimately susceptible of that interpretation. Óur goal is to discern the apparent legislative intent in enacting the relevant version of the religious-entity exemption, not to adopt a judicial construction to give that exemption the meaning we might believe most salutary.
 

 As we previously noted, “[t]o take advantage of the exemption, an entity apparently need only be ‘religious’ and ‘not organized for private profit.’ ”
 
 (McKeon, supra,
 
 19 Cal.4th at p. 326.) That Hospital is a corporation not organized for private profit is undisputed. Also certain from the showing made by Hospital in support of its motion for summary judgment is
 
 *1115
 
 that, at a minimum, Hospital was founded by a religious group, is affiliated with and to some extent controlled by that religious group and, if it is ever dissolved, its assets will revert to that religious group.
 

 The legislative history of section 12926 provides little guidance in interpreting its meaning. Plaintiff suggests that in initially drafting the Fair Employment Practices Act, the predecessor to FEHA, and its exceptions, the Legislature had the power to enact language that would have expressly excluded religiously affiliated hospitals, but did not do so. She also notes that the Legislature in 1977 amended the act’s exemptions, but did not take that opportunity to add clarifying language specifically providing that the religious-entity exemption applies to religiously affiliated hospitals. That the Legislature did neither of these things does not, however, create a legitimate inference that it did not intend to include religiously affiliated hospitals in the facially broad language of the religious-entity exemption along with other religiously affiliated entities. Standing alone, the failure to add additional language under these circumstances creates no inferences at all.
 

 We previously explored the legislative history of FEHA in
 
 Robinson, supra, 2
 
 Cal.4th at pages 236-243. When it was enacted in 1959, Labor Code former section 1413, subdivision (d), the predecessor statute to Government Code section 12926, provided: “ ‘Employer’ does not include a social club, fraternal, charitable, educational or religious association or corporation not organized for private profit.” (Stats. 1959, ch. 121, § 1, p. 2000.) As will be discussed below, the first four of these categories of exempted employers were excised from the statute in a 1977 amendment, an amendment that left the language of the religious-entity exemption intact.
 

 At different points in their briefing, plaintiff and supporting amicus curiae California Employment Lawyers Association (hereafter amicus curiae) advance three different ways in which the language of the exemption might be interpreted so as to permit plaintiff’s claim against Hospital to go forward. First, the exemption might be interpreted to permit discrimination by religious entities only in situations where the religious faith of the employee is a legitimate requirement of the job in which the employee is engaged. As religious faith is not one of the qualifications legitimately required of a nurse, the exemption as thus interpreted arguably would be inapplicable to a claim by a nurse. Second, the exemption might be interpreted to permit religious entities to discriminate against all employees, whatever their position, provided the entity does so solely on the basis of religion. As plaintiff, however, claims age rather than religious discrimination, this postulated exemption arguably would be inapplicable to her claim. Finally, the exemption might be interpreted as applying only to churches and other proselytizing organizations that have a religious rather than secular purpose. Under
 
 *1116
 
 this theory, if health care is viewed as a secular function, Hospital would be ineligible for the exemption despite its religious affiliations.
 

 We have examined the statute, its legislative history and analogous authority to determine whether any support can be found for any of these readings in light of the facially broad language of the prior version of the exemption which continues to be applicable to plaintiff’s claim. We conclude no legitimate basis appears to exclude Hospital from the scope of the relevant version of the religious-entity exemption in any of these manners.
 

 The first suggested interpretation, that the exemption is conditioned upon the nature of the employee’s job position, is easily refuted. That interpretation clearly ignores the structure of the statute itself, which predicates potential FEHA liability on the status of the defendant as an “employer.” (§ 12926.) The exemption renders qualified religious entities exempt from FEHA in its entirety. The nature of the employee’s work is not relevant; the nature of the entity that employs him or her is determinative. Indeed, the Legislature specifically rejected an opportunity to narrow the scope of the exemption in precisely this manner when, in 1977, it amended Labor Code former section 1413, subdivision (d) to remove the statutory exemption for social, fraternal, charitable and educational associations. (Stats. 1977, ch. 1019, § 1, p. 3055.) The original version of the proposed amendment would have defined the term “employer” as “not includ[ing] a religious association or corporation when employing persons directly involved in carrying out the religious purposes of the religious association or corporation.” (Assem. Bill No. 1047 (1977-1978 Reg. Sess.) § 1, as introduced Mar. 22, 1977.) Subsequent versions of the bill, however, abandoned this reformulation, and the Legislature ultimately retained the religious-entity exemption in precisely the same language as before: “religious association or corporation not organized for private profit.” (Stats. 1977, ch. 1019, § 1, p. 3055.)
 

 The second proposed interpretation, that the religious-entity exemption permits such entities to discriminate only on the basis of religion, is equally unsupported by the terms of the statute. Only employers are subject to FEHA. Whether a religious entity, whatever that phrase may mean, is an employer is not dependent on the nature of the discrimination claim made against the entity. Amicus curiae nevertheless suggests that we follow a 1985 decision of the FEHC that concluded the religious-entity exemption applies only to allegations of religious discrimination, and only in situations where the religious faith of the employee is a legitimate job requirement.
 
 (Department of Fair Employment and Housing v. Hoag Memorial Hospital Presbyterian
 
 (1985) No. 85-10, FEHC Precedential Decs. 1984-1985, CEB
 
 *1117
 
 14
 
 (Hoag).)
 
 The
 
 Hoag
 
 decision, however, is not a persuasive interpretation of the exemption, as it ignores the plain language of the statute.
 

 Prior to the
 
 Hoag
 
 decision, the FEHC had interpreted the religious-entity exemption “to mean that a nonprofit organization is entirely exempt from [FEHA] if it can demonstrate that it is in fact religious in nature.”
 
 (Hoag, supra,
 
 No. 85-10, FEHC Precedential Decs. 1984-1985, CEB 14, p. 7.) This understanding is reflected in a regulation promulgated by the FEHC in 1980, which provided that “any non-profit religious organization exempt from federal and state income tax as a non-profit religious organization is presumed not to be an employer under [FEHA].” (Cal. Code Regs., tit. 2, § 7286.5, subd. (a)(5).)
 

 In
 
 Hoag,
 
 the FEHC considered a sex discrimination complaint that arose from a religiously affiliated hospital’s refusal to allow a male nurse to work in the postpartum unit. The FEHC reversed course from its prior understanding of the exemption, stating it had “become convinced . . . that this interpretation of the religious exemption is far too broad, and runs contrary both to our obligation to interpret [FEHA] liberally to prevent and eliminate discrimination . . . and to the Constitutional injunctions against establishment of religion. We have determined, therefore, that the soundest rule is that a nonprofit organization should be exempt from [FEHA] if it can demonstrate not just that it is a religious organization, but also that the case in which it claims exemption involves the denial of a job for which practice of and belief in the religion of the organization is a legitimate, job-related requirement, on the ground that the person rejected does not adhere to that religion. Where this test is met, we see good cause to exempt the employer, as to that job. We can no longer see any justification for excusing employers which may be essentially religious in nature when they discriminate on religious grounds in jobs that do not require their religion, or when they discriminate in any job on the basis of race, sex, or other bases protected under [FEHA].”
 
 (Hoag, supra,
 
 No. 85-10, FEHC Precedential Decs. 1984-1985, CEB 14, p. 7.)
 

 With reference to its own regulation providing that any organization holding tax-exempt status as a nonprofit religious organization is presumed not to be an employer under FEHA, the FEHC stated that this “presumption is part of a regulation which we now believe does not state the proper standard for [FEHA’s] religious exemption” and “is in the process of being repealed.”
 
 (Hoag, supra,
 
 No. 85-10, FEHC Precedential Decs. 1984-1985, CEB 14, p. 8.)
 

 The
 
 Hoag
 
 decision was incorrect on several counts. Despite the prediction that the regulatory presumption was in the process of being repealed, that
 
 *1118
 
 regulation in fact remains effective to this date. (Cal. Code Regs., tit. 2, § 7286.5, subd. (a)(5).) More importantly, the decision appears to reflect not what the Legislature
 
 actually
 
 set forth in the statutory language, but, rather, the FEHC’s opinion of what, in an ideal statute, a religious-entity exemption
 
 should
 
 provide. First, the
 
 Hoag
 
 decision concludes that a religious entity may discriminate only where religion is a legitimate job-related requirement for the particular employee. In doing so, it does not even attempt to explain how this interpretation may be reconciled with the actual language of the statute, which conditions the exemption on the status of the employer rather than on the job held by the particular employee. The
 
 Hoag
 
 decision concludes, moreover, that even if a religious entity qualifies for the exemption, the exemption shields the entity only from claims of religious discrimination. This limitation flies in the face of the express terms of section 12926, subdivision (d), which provides that all qualifying religious entities are excluded from the definition of “employer” under FEHA, with no reference to the nature of the violations alleged against them.
 

 Although courts ordinarily give substantial weight to the FEHC’s construction of the statutes under which it operates (Robinson, supra, 2 Cal.4th at pp. 234-235 & fn. 6), we will not do so where the agency’s interpretation is “clearly erroneous or unauthorized”
 
 (Cuadra
 
 v.
 
 Millan
 
 (1998) 17 Cal.4th 855, 870 [72 Cal.Rptr.2d 687, 952 P.2d 704];
 
 People ex rel. Lungren v. Superior Court
 
 (1996) 14 Cal.4th 294, 309 [58 Cal.Rptr.2d 855, 926 P.2d 1042]). Because the
 
 Hoag
 
 decision cannot be reconciled with section 12926, it is not useful authority.
 
 [4]
 

 Amicus curiae also suggests that we interpret the religious-entity exemption by reference to the religious-entity exemption contained in title VII, the federal employment discrimination law originally enacted in 1964 (42 U.S.C. § 2000e et seq.). Although California courts have frequently looked to title VII jurisprudence to interpret analogous principles of California law, to do so here is inappropriate for several reasons, the most significant being that the language of the federal exemption is significantly different than the language of section 12926. Title VII exempts from its scope “a religious corporation, association, educational institution, or society with respect to
 
 *1119
 
 the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.” (42 U.S.C. § 2000e-l(a).) Under title VII, a religious organization may discriminate against any employee on religious grounds
 
 (Corporation of Presiding Bishop
 
 v.
 
 Amos
 
 (1987) 483 U.S. 327, 335-336 [107 S.Ct. 2862, 2868-2869, 97 L.Ed.2d 273]), but may not discriminate on any other prohibited basis, such as sex or race
 
 (Boyd v. Harding Academy of Memphis, Inc.
 
 (6th Cir. 1996) 88 F.3d 410, 413 [sex];
 
 Rayburn v. General Conf. of Seventh-Day Adventists
 
 (4th Cir. 1985) 772 F.2d 1164, 1166-1167 [sex and race]). Given the patent differences between the title VII exemption and section 12926, and the fact title VII was enacted five years
 
 after
 
 the predecessor to section 12926 went into effect in California, we cannot legitimately construe section 12926 by reference to 42 United States Code section 2000e-1(a).
 
 [5]
 

 In light of the statute’s unqualified exemption of religious entity employers, it is clear the relevant version of the religious-entity exemption is not limited so as to permit religious entities to discriminate, provided they do so solely on the basis of religion, nor is it limited to situations where the religious faith of the employee is a legitimate requirement of the relevant job. If Hospital is qualified as a “religious association or corporation not organized for private profit” (§ 12926, subd. (d)), it will be exempt from FEHA regardless of the nature of the employee’s job or the type of discrimination it allegedly practiced.
 

 This leaves plaintiff’s most difficult argument: that the religious-entity exemption should not apply to Hospital because Hospital’s primary function is the provision of health care and that function is insufficiently religious. While this argument has superficial appeal, it ultimately is irreconcilable with the words, structure and history of the relevant version of section 12926.
 

 As previously noted, the religious-entity exemption applies to any “religious association or corporation not organized for private profit.” (§ 12926.) No definition of the term “religious” is found in the statute, and we have not been presented with a definition from any source, legal or linguistic, that we may say for certain sets forth an accurate expression of the legislative intent
 
 *1120
 
 behind this statute.
 
 [6]
 
 This is not surprising; few words in our language encompass such a broad range and nuance of potential meaning as the word “religion,” and all available definitions are necessarily influenced by the context in which they arise.
 

 This does not mean we can discern from the language itself no information about the meaning of the statute. Our task is not to define the word “religious” in the abstract, but rather to determine the Legislature’s intent in exempting from FEHA any “religious association or corporation not organized for private profit.” These words, taken together, have a different implication than the word “religious” standing alone. The term “corporation” would arguably be superfluous if, as plaintiff contends, the Legislature intended to exempt only those entities traditionally understood as churches and religious orders. At the very least, the exemption would be a remarkably inelegant way by which to designate such a limited class of institutions.
 

 In addition, we may be reasonably certain from this language that, whatever their other characteristics, the religious entities to be exempted are not limited to religious organizations solely engaged in worship and proselytization of their faith. By specifically extending the exemption to religious “corporation[s] not organized for private profit” (§ 12926), the Legislature appears to have anticipated that at least some of the exempted religious employers would be corporations that engage in potentially remunerative activities, albeit not for private profit. This language cannot easily be reconciled with an interpretation that would limit the exemption solely to groups whose essential character and purpose are “religious,” narrowly defined to mean engaged in activities relating only to active manifestation of devotion and obligation to a supreme being. Although a purely religious group of the kind plaintiff envisions might potentially engage employees for the limited remunerative purpose of collecting donations and otherwise managing the incidental monetary exchanges necessary to support the worship activities of the group, that such groups provided the motivation for the Legislature’s inclusion of the “religious corporation” aspect of section 12926 is unlikely. Such a group would already qualify for exemption as a “religious
 
 *1121
 
 association” (ibid.); hence, adding to the exemption the additional words “or corporation not organized for private profit” would have been unnecessary.
 

 That the Legislature had a broader intention when it chose the subject language is suggested by the provision’s legislative history. As noted above, section 12926’s predecessor statute, Labor Code former section 1413, subdivision (d), was enacted in 1959 to provide as follows: “ ‘Employer’ does not include a social club, fraternal, charitable, educational or religious association or corporation not organized for private profit.” (Stats. 1959, ch. 121, § 1, p. 2000.) By amendment in 1977, the Legislature eliminated the first four categories of exempted employers, leaving intact only the religious-entity exemption. (Stats. 1977, ch. 1019, § 1, p. 3055.) As the language describing the exempt religious entities remained unchanged, we must presume the Legislature did not intend in 1977 to alter the meaning of the religious-entity exemption from its original 1959 incarnation. Thus, our current understanding of “religious association or corporation not organized for private profit” must take into account the presence of those other four exempted categories with which religious entities were associated in the 1959 statute.
 

 The principle of
 
 ejusdem generis
 
 instructs that “when a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope. [Citations.]”
 
 (Moore v. California State Bd. of Accountancy
 
 (1992) 2 Cal.4th 999, 1011-1012 [9 Cal.Rptr.2d 358, 831 P.2d 798].) Applied here, that principle suggests a broad reading of the religious-entity exemption in accordance with those other four broad categories with which religious entities once were listed.
 

 That the 1959 Legislature would have considered religiously affiliated hospitals and other religiously affiliated quasi-secular entities any less worthy of exemption from FEHA than it did the great mass of social, fraternal, charitable and educational entities it chose to exempt at that time seems unlikely. To the contrary, the smorgasbord of exclusions in the 1959 statute appears to evidence a legislative unwillingness to impose a new and, at that time, potentially controversial remedial statute upon any group dedicated to social welfare, as opposed to private profit. Imposing plaintiff’s implied qualification to the religious-entity exemption, moreover, would evoke similar questions for the other originally excluded categories. But no reason appears to believe the Legislature intended social clubs or fraternal organizations to lose their exemptions if their activities were not deemed exclusively “social” or “fraternal” under some dictionary definition. Nor does it
 
 *1122
 
 seem likely the Legislature would have intended a qualification test for religious entities alone, without drawing some distinction between religious entities and other exempted employers in the language of the statute.
 

 Hospital was founded by members of the Methodist faith, is controlled by directors selected by a subgroup of the United Methodist Church, and operates under guidelines set by church associations. Health care is a social service that historically has been associated with religious groups, and plaintiff does not dispute that Hospital’s founders were motivated by a sincerely held belief that healing the sick serves to advance the religious principles of the Methodist faith. None of the various facts set forth by plaintiff in opposition to the motion for summary judgment negate this demonstration of religious character.
 

 For example, plaintiff argued that Hospital’s nonreligious nature may be discerned from its articles of incorporation, which evidence that Hospital is controlled by the Methodist Church but do not formally define its purpose as religious in nature. We discern little point in parsing out and weighing every clause of Hospital’s articles and bylaws. Suffice to say that other passages of those documents contain language arguably religious in character and, even if they did not, the omission of sufficient specific religious language in the articles does not negate the religious motivation underlying the creation and operation of the Hospital. “However wise or unwise it might be to require religious entities to identify themselves as such through their method of incorporation, in fact no such requirement exist[ed]” in the version of the statute relevant to this case.
 
 (McKeon, supra,
 
 19 Cal.4th at p. 329.) At that time, “[n]o provision of California law . . . preclude[d] a religious entity from describing its purposes as ‘public or charitable’ ” rather than religious.
 
 {Ibid.)
 
 Similar reasoning applies to efforts to focus on a formal statement of purpose in the articles of incorporation; there is no statutory justification for exalting form over substance here.
 

 Plaintiff relied on the facts that nearly half the members of the board may be non-Methodist and only one member of the board need be a Methodist minister. These facts merely evoke their corollaries: that at least half the members of the board
 
 must
 
 be Methodists, and the board must always have at least one Methodist minister. Plaintiff further noted that Hospital does not require its patients or employees to profess the Methodist faith. However, if those who created and control Hospital themselves view healing the sick without regard to the patient’s religious beliefs to be part of their religious purpose, then the religious beliefs of the patient are of little relevance in assessing the religious nature of the entity providing their care. Likewise, if
 
 *1123
 
 Hospital’s goal of healing the sick is to be conducted with maximum effectiveness, Hospital may find it necessary to hire whatever employees are most qualified or readily available to do the job, regardless of their religious affiliation. The employees’ religious affiliations or lack thereof do not negate the religious nature of the entity that employs them.
 

 Plaintiff also relied upon an “admission” by Hospital’s administrative director of human resources, who acknowledged that Hospital’s business is “[c]aring for the health care needs of the community.” The fact that Hospital’s business may be so characterized by one employee in one context does not negate Hospital’s religious nature. Indeed, one could equally well argue that the United Methodist Church has the capacity to fulfill a religious mission that includes healing the sick solely because the founders of the Hospital were motivated by their religious faith to create a vehicle with the capacity to care for the health care needs of the community. Amici curiae the California Catholic Conference, the Pacific Union Conference of Seventh-day Adventists, the Church State Council, the Council on Religious Freedom, Loma Linda University, Loma Linda University Medical Center and Adventist Health likewise assert that religious faith originally provided and continues to provide the underlying motivation for the establishment and maintenance of their numerous hospitals, schools and charitable organizations.
 
 [7]
 

 That the 1959 Legislature was aware of the propensity of religious groups to advance their spiritual goals through the formation of separate institutions that some might characterize as secular seems a reasonable assumption; therefore, to interpret the statutory language “religious association or corporation not organized for private profit” as having been crafted precisely in recognition of this propensity appears appropriate. (Stats. 1959, ch. 121, § 1, p. 2000.) Had the Legislature intended to draw a distinction between religious groups and the affiliated institutions they create in order to advance their goals, it could easily have used language that affirmatively drew such distinctions. The Legislature did not do so in 1959, nor in 1977 when it amended the exemption, nor in 1980 when it recodified the religious-entity exemption in section 12926 as part of FEHA.
 

 
 *1124
 
 Likewise, had the 1959 Legislature intended, in granting the religious-entity exemption, to differentiate among some institutions created by and affiliated with religious groups according to the type of service the institution provided, it more than likely would have articulated within the relevant version of the exemption some basis for religious groups to predict in advance whether a contemplated institution would or would not be exempt. Finally, had the Legislature intended the courts to undertake the difficult task of determining whether to permit particular religiously affiliated entities to claim the exemption, it more than likely would have provided some language within the statute itself to give the courts a reasoned basis to draw the necessary distinctions. The relevant version of section 12926 is devoid of any such indications.
 

 The mere fact that nonreligious organizations may also provide health care does not lead us to the conclusion the Legislature intended to exclude religiously affiliated hospitals from the religious-entity exemption. Indeed, if a religiously affiliated hospital is not sufficiently religious to claim the exemption, then what of a soup kitchen located in a church basement? It may be argued that the technical purpose of a soup kitchen is to provide food to the hungry rather than to make an immediate manifestation of devotion to a divine entity. Sustenance certainly may be obtained in the secular world outside the auspices of the church. Nevertheless, while providing food is an arguably secular function, the church’s underlying motivation for feeding the destitute remains a matter of religious motivation and faith. Plaintiff’s briefing provides us with no principled basis to draw a distinction between a soup kitchen and the Hospital under her interpretation of the relevant version of the religious-entity exemption.
 

 Every religiously affiliated entity generally is both secular and religious to some extent, from small entities like soup kitchens and parochial schools to large organizations like religiously affiliated universities and the Christian Science Monitor. We are not prepared to hold that all of these are prohibited from qualifying as religious solely because their functions may be duplicated in some manner by secular institutions. Yet we have no reasoned basis to draw a distinction among these institutions, or between any of these institutions and the Hospital. The Legislature gave no indication that it intended the courts to attempt to parse out various levels of religious sufficiency among the myriad types of religiously affiliated entitiés in order to determine when to apply the exemption, and provided us with no guidance on how to undertake such a difficult task. Absent any such indications or guidance, it is not appropriate for this court to create a religious sufficiency test out of whole cloth. We therefore read the relevant version of the
 
 *1125
 
 religious-entity exemption as encompassing any entity with colorable religious motivation and substantial bona fide religious affiliations, including Hospital.
 

 Amicus curiae directs us to a decision from the State of Washington,
 
 Hazen v. Catholic Credit Union
 
 (1984) 37 Wash.App. 502 [681 P.2d 856]
 
 (Hazen).
 
 In
 
 Hazen,
 
 the Washington Court of Appeals held that a credit union organized to benefit Roman Catholics and employees of Roman Catholic institutions did not qualify as a “ ‘religious or sectarian organization not organized for private profit’ ” so as to qualify for an exemption from the state employment antidiscrimination statute.
 
 (Id.
 
 at p. 857.) Using a dictionary definition of the words “religious” and “sect,” the court concluded the credit union was not a religious organization that qualified for the exemption because “[w]e do not believe promoting thrift and providing a source of credit are manifestations of devotion to a superior being in a religious sense.”
 
 (Id.
 
 at p. 858.)
 

 Hazen
 
 is readily distinguishable from the present case. The statutory language of the Washington exemption encompassing any “religious or sectarian organization” is arguably more susceptible to an interpretation limited to traditional religious groups than is the disjunctive “religious association or corporation” language utilized in FEHA. Moreover, the credit union seeking to claim the exemption in
 
 Hazen
 
 was very different than Hospital. The credit union was founded by lay people and had “no organizational, structural, or financial ties to the Roman Catholic Church or any diocese. The Diocese of Yakima receives no reports from the Credit Union and has no input regarding its operational, business, financial or management decisions. . . . [¶] The Credit Union’s board of directors are chosen for their financial, business, or other management skills and not for their religious qualifications. No member of the Catholic clergy has ever served as a director of the Credit Union.”
 
 (Hazen, supra,
 
 681 P.2d at p. 857.)
 

 Significantly, amicus curiae’s brief omits discussion of subsequent authority from the State of Washington that makes clear Hospital would be considered an exempt entity under Washington law as well.
 
 Farnam
 
 v.
 
 CRISTA Ministries
 
 (1991) 116 Wash.2d 659 [807 P.2d 830] concerned an employment discrimination claim by a nurse in a religiously affiliated nursing home. The defendant was not a religious group per se, but rather a “nonprofit interdenominational Christian organization, which is a single corporate entity encompassing seven divisions, including schools, counseling services, radio stations and health care facilities.”
 
 (Id.
 
 at p. 831.) The Washington Supreme Court concluded the defendant was a “ ‘religious or
 
 *1126
 
 sectarian organization not organized for private profit’ ” under Washington law and thus exempt from an employment discrimination claim.
 
 (Id.
 
 at p. 837.) The plaintiff in
 
 Famam
 
 had argued that she was employed by a subentity, the nursing home, that did not qualify for the exemption because nursing care is not a “religious purpose.” In rejecting this argument, the court specifically criticized the
 
 Hazen
 
 decision for “unnecessarily” grafting a specific religious purpose test drawn from an unrelated tax statute onto the language of the antidiscrimination statute.
 
 (Id.
 
 at p. 838.)
 

 Famam
 
 was followed by yet another Washington State decision, this one specifically recognizing that a religiously affiliated hospital
 
 is
 
 a religious nonprofit organization exempt from the Washington antidiscrimination law.
 
 (City of Tacoma v. Franciscan Foundation
 
 (1999) 94 Wash.App. 663 [972 P.2d 566].) Thus, to the limited extent that Washington State law gives us assistance in interpreting the language of California’s religious-entity exemption, that authority unequivocally holds that a religiously affiliated health care provider such as Hospital is qualified for, not disqualified from, Washington’s arguably analogous religious-entity exemption.
 

 Hospital qualifies as a “religious association or corporation not organized for private profit” as that category was likely understood by the 1959 Legislature that first crafted the applicable version of the religious-entity exemption (now § 12926, subd. (d)). For purposes of this action, Hospital is exempt from a claim for wrongful termination in violation of public policy based upon the public policy expressed in FEHA. Summary judgment was properly entered.
 

 III. Disposition
 

 The judgment is affirmed.
 

 George, C. J., Mosk, J., Kennard, J., Baxter, J., Chin, J., and Brown, J., concurred.
 

 Appellant’s petition for a rehearing was denied June 28, 2000.
 

 [1]
 

 A11 further statutory references are to the Government Code unless otherwise specified.
 

 [2]
 

 On October 9, 1999, the Governor signed into law Assembly Bill No. 1541 (1999-2000 Reg. Sess.), which revised the religious-entity exemption by adding sections 12922 and 12926.2 to the Government Code. (Stats. 1999, ch. 913, §§ 1, 2.) Section 12922 provides that an “employer that is a religious corporation may restrict eligibility for employment in any position involving the performance of religious duties to adherents of the religion for which the corporation is organized.” Section 12926.2 provides statutory definitions for the terms “religious corporation,” “religious duties” and “employer.” That section further provides that employers covered by FEHA include “a religious corporation or association with respect to persons employed by the religious association or corporation to perform duties, other than religious duties, at a health care facility operated by the religious association or corporation for the provision of health care that is not restricted to adherents of the religion that established the association or corporation.” (§ 12926.2, subd. (c).)
 

 These modifications to the religious-entity exemption went into effect on January 1, 2000. While it is not this court’s ordinary practice to issue opinions construing superseded statutory language, the parties have identified several unrelated actions the resolution of which also revolves around the proper construction of the former version of the exemption. In addition, numerous lawsuits may be pending of which the parties are unaware, and additional civil actions may arise out of administrative complaints previously filed with the Department of Fair Employment and Housing. Consequently, we feel it appropriate to retain and resolve the fully briefed matter before us. In so doing, we express no view regarding the scope of the religious-entity exemption as modified by Assembly Bill No. 1541.
 

 [3]
 

 The petition for review and briefing raise several additional arguments concerning the constitutionality of the religious-entity exemption. Because these arguments were not properly preserved in the lower courts, we do not address them in this opinion.
 

 [4]
 

 Deference to the
 
 Hoag
 
 construction is particularly inappropriate in this case. As we noted in
 
 Robinson,
 
 an administrative construction is useful in determining legislative intent when
 
 the
 
 construction is “reasonably contemporaneous with the law’s adoption.”
 
 (Robinson, supra,
 
 2 Cal.4th at p. 234.) The
 
 Hoag
 
 decision was not contemporaneous with the Legislature’s adoption of the religious-entity exemption. Indeed, as noted above, a more contemporaneous FEHC interpretation of the exemption is found in the 1980 FEHC regulation providing that any organization holding tax-exempt status as a nonprofit religious organization is presumed not to be an employer under FEHA. (Cal. Code Regs., tit. 2, § 7286.5, subd. (a)(5).)
 

 [5]
 

 Even were we to do so, that the result would favor plaintiff’s position is far from clear. Federal decisions have found numerous quasi-secular institutions to be exempt religious employers under title VII standards. (See, e.g.,
 
 Corporation of Presiding Bishop v. Amos, supra,
 
 483 U.S. 327 [gymnasium];
 
 Feldstein
 
 v.
 
 Christian Science Monitor
 
 (D.Mass. 1983) 555 F.Supp. 974 [newspaper];
 
 E.E.O.C. v. Presbyterian Ministries, Inc.
 
 (W.D.Wash. 1992) 788 F.Supp. 1154 [retirement home].)
 

 [6]
 

 Plaintiff argues that a definition of “religious” may be drawn from
 
 Bradfield
 
 v.
 
 Roberts
 
 (1899) 175 U.S. 291 [20 S.Ct. 121, 44 L.Ed. 168], a case in which the United States Supreme Court held that a contract between the federal government and a religiously affiliated hospital did not violate the prohibition against the establishment of religion contained in the United States Constitution. This authority is not helpful here. We have no reason to believe that our California Legislature intended the words “religious association or corporation not organized for private profit” as used in the religious-entity exemption to be construed by reference to the constitutional analysis in
 
 Bradford,
 
 which applied entirely different concepts to inapposite language 60 years prior to the enactment of California’s Fair Employment Practices Act (now FEHA).
 

 [7]
 

 This is not to say that a court is prohibited from questioning the truth of an entity’s claim of religious belief. While it is generally inappropriate for a court to judge the truth or validity of a religious practice or belief, it is not illegitimate to inquire whether or not claims to religious belief are sincerely held or merely a sham put forth in an effort to avoid the reach of laws, such as FEHA and the tax codes, that would otherwise apply to the entity’s detriment. (See, e.g.,
 
 United States v. Ballard
 
 (1944) 322 U.S. 78 [64 S.Ct. 882, 88 L.Ed. 1148].) While plaintiff does question whether Hospital legally qualifies as a religious entity, the sincerity of the Methodist belief that the provision of health care advances their religious mission is not at issue in this case.